## LEONARD TIMMERMAN v. BENSON BIDWELL.

*Evidence—Of condition of bank-account of company—Whose president represented, as an inducement to secure members, that it maintained a "security fund" for their protection—Which was deposited in a specified bank—Held admissible—Objection, at close of testimony of witness, that it was all incompetent and irrelevant—Properly overruled where a portion was competent and all of it relevant—Rule that courts will leave parties in statu quo—Where suit is brought by one against the other, based on defendant's alleged fraud—Applies to a case where both are parties to a fraudulent scheme to cheat the public—And is not applicable where plaintiff is the dupe of an unscrupulous swindler.*

1. Where the president of a so-called "Union Trust Company," in advertising its business methods, represented that it had a "security fund," into which a portion of the cost of certificates of membership was paid for the *security* of members, stating their number and asserting that its business was as reliable and safe as that of any bank in the State, and designated a certain bank as the depository of such fund,—

    *Held,* in a suit brought by a member to recover from such president the money paid in reliance upon such representations, that it was competent to permit the cashier of said bank to testify how the account of said company stood at said bank at time of such representations.

2. Where at the close of the examination of a witness the counsel for the opposing party objected to his *entire* testimony as *incompetent and irrelevant,* and it appeared that *some* of the evidence was *competent* and *all* of it was *relevant,*—

    *Held,* that the objection was properly overruled.

3. There was no error in the charge of the court relative to the "security fund." (See pages 211–12 of opinion for charge excepted to.)

4. Where the facts in a case do not disclose a fraudulent scheme entered into between the plaintiff and defendant to cheat the public, or any particular person, but present a case of a sharp and unscrupulous swindler and confiding dupe, the rule applicable to the former case, that courts will leave the parties where they have placed themselves, does not apply.

Error to Kent. (Montgomery, J.) Argued June 7, 1886. Decided July 1, 1886.

Case.   Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*D. E. Corbitt,* for appellant :

The meaning of a paper is a question for the court : Town-send on Slander, 286 ; *Williams v. Norwood,* 2 Yerger, 330 ; Stephens on Pleading, 382.

[Brief mainly confined to an elaborate discussion of the evidence and peculiar features of the case. No other authorities cited.—REPORTER.]

*W. W. Taylor* and *John W. Holcomb,* for plaintiff :

The case of *Murphy v. Bidwell,* 52 Mich. 487, has no bearing on this case. [No further authorities cited. —REPORTER.]

CHAMPLIN, J. This is an action on the case, brought by the plaintiff to recover money back from the defendant which plaintiff alleges was obtained from him through the false and fraudulent representations of defendant.

The plaintiff introduced evidence tending to prove that defendant represented himself to be the president of a corporation claimed to be organized under the laws of the State of Michigan, called the "Union Trust Company of Grand Rapids." The objects of this corporation, as stated in their articles of association, were, first, to secure to the family or heirs of any members, upon death, the sum not to exceed $1,000, to be paid by the company, either out of its funds or by assessment made upon the members thereof ; and also to secure to any member the sum of not to exceed $12 a week, payable weekly, in case such member is disabled from attending his duties by sickness or other disability.

No legitimate business appears ever to have been done under these articles, but the name was used as a guise under which the defendant originated and carried on for a time a scheme to swindle the ignorant and uninformed portion of the community out of their earnings.

He edited and circulated a paper called "*The Truth*;" which, among other things, contained the following:

"THE UNION TRUST COMPANY OF GRAND RAPIDS, MICHIGAN.

"Benson Bidwell, President; Fourth National Bank, Depository; W. D. French (bonds $1,000), Secretary.

"Directors: H. N. Stinson, Rockford; Isaac Hogle, Clarksville; Benson Bidwell, Grand Rapids; Dr. G. H. Chappell, Cedar Springs; George E. Hilton, Fremont Center; W. D. French, Grand Rapids; W. Tilletson, Grand Rapids; F. M. Sanderson, Grand Rapids. F. D. Prindle, Superintendent of Agencies.

"The Union Trust Company was organized as a mutual aid society, for the purpose of helping each other bear the burdens of life.

"$100 class: Entrance fee, $1; one contribution, $1.50; cost of joining, in full, $2.50. The other contributions, of $1.50 each, to be paid on the first, tenth, and twentieth of each month. As the members are paid out in rotation, no member is to pay over $33 in contributions, and one dollar entrance fee, and one dollar for the *Truth*. If members wish, they can pay for the paper when they get their money, and any part of the $33 remaining unpaid when the certificate is paid will be charged ten per cent.

"When your certificate comes in its regular rotation you will be paid one hundred dollars, less the expense account of ten dollars, and security fund of ten dollars, and subscription to the *Truth*, one dollar. If any one has paid $33 in full, such member will receive $79, and clear $46.

"The Union Trust Company was organized the twenty-eighth day of March, 1882. The company has 1,450 members, and believes that its business is as reliable and safe as that of any bank in the State of Michigan. We fix the contributions at $1.50, so that working men and women can receive the benefits of this association; but those who have the money to spare, and can pay in larger amounts, will receive their money in less time, as they help to pay off those in front of them quicker than would be done if the money came in $1.50 at a time. To illustrate: A member has been credited with one hundred dollars. He is debtor to the expense account, $10; security fund, $10; subscription to the *Truth*, $1; which makes $21. He has paid, in full, $34; total, $55; amount he clears, $45; the amount he receives, $79. 255 certificates have been paid to date, October 1st.

"Please remember all contributions the first, tenth, and

twentieth of the month, as the company does not send notice. You have ten days after each date to pay contributions. Those who become in arrears will become delinquent, and their certificates will lapse. For the general good of all members, we must enforce the above rules."

To accommodate his scheme to the cupidity of that large class in the community which are ever seeking to get something for nothing, he had a $600 class, in which the entrance fee was $5 ; contributions, $5, not exceeding forty ; and each member was to be paid, in rotation, $600, less the security fund of $170 and the expense account of $30. He also had a $50 class, concerning which an article was read in evidence from the *Truth*, as follows :

### " FIFTY-DOLLAR CLASS.

" The fifty-dollar class was organized to help working men and women who can pay but fifty cents a week. We pay, in rotation, those who have paid $15, in full, or one hundred per cent. of the amount they have paid in when their turn comes. The contributions in this class are fifty cents every Monday, and thirty in number. The following certificates have been paid to date in the fifty-dollar class."

Then followed a list of names to the number of 52,— names of persons who had been paid,—the number of certificates, however, ranging from 1 to 298.

The counsel for the plaintiff next read in evidence an article from a paper called " The *Saturday Evening Herald*," published in said paper by the defendant, which bears date May 12, 1883, which is as follows :

" List of persons paid by the Union Trust Company, Grand Rapids, Michigan, Rooms No.——, Monroe street.

### " FIFTY-DOLLAR CLASS.

" The fifty-dollar class was organized November 15, 1882, to help working men and women who can pay 50 cents a week. The contributors in this class pay fifty cents every Monday, and forty in number."

Then followed the names and residences of 17 different persons, members of said class ; the number of certificates ranging from 1 to 320.

The plaintiff claims that, being influenced by the repre-

sentations contained in the paper circulated by defendant called "*The Truth*," and relying upon the honesty and good faith in which the business was conducted, took a certificate in the $100 class, and two certificates in the $50 class, all of which he took in the name of his wife, Johanna Timmerman. These certificates were nearly in the same form, and that in the $50 class is as follows:

## "CERTIFICATE No. 145.

### "THE UNION TRUST COMPANY OF GRAND RAPIDS, MICH.

"This will certify that Johanna Timmerman, of Grand Rapids, county of Kent, and State of Michigan, has this day become a member of a class of persons organized by the said Union Trust Company named above, and has paid to the use of said company the sum of one dollar as an entrance fee, and the further sum of fifty cents as her first contribution; and has agreed to pay the said Trust Company, on the first Monday of each week after the date hereof, the further contribution of fifty cents, until this certificate is paid by said company; provided, the aggregate of her said contributions shall not exceed fifteen dollars; and, in case the above payments are not made at the time above specified, the rights of the said Johanna Timmerman shall be forfeited and canceled.

"In consideration whereof the said company agrees that it will pay, in the order of issuing its certificates, out of contributions of its members, the sum of fifty dollars to the said Johanna Timmerman, less ten dollars hereof for the expense of collection, and the sum of ten dollars retained as the security fund.

"The said Union Trust Company are to have the right at any time, when in funds, to pay the said sum of fifty dollars, less the deduction above specified.

"And it shall also have the right, in such case, to deduct a proportionate amount of any contributions remaining unpaid on this certificate.

"This certificate is not transferable, unless paid in full.

"In witness whereof the said trust company, by its president and secretary, have signed and delivered this certificate and agreement this twenty-fifth day of November, 1882.

"BENSON BIDWELL, President.

"WILLIAM D. FRENCH, Secretary."

Plaintiff paid, from time to time, in so-called contributions,

to Bidwell and French, and other assumed agents of the company, in the aggregate $65.50, being all that he was required to pay to entitle him to payment "in rotation" of the sums mentioned in his certificates, less the amount to be retained by the company for expenses and "security fund." Not being paid, he began to realize that he had been defrauded, and brought this action to recover back his money.

He showed that there was no "security fund" kept by the company, and that certificates issued by the president and secretary of the so-called Union Trust Company were not paid in rotation, and that those issued were not numbered consecutively; that certificates issued the same day, in the same class, bore numbers widely apart, and some of them much smaller than those who had joined at an earlier date; that children and relatives of Bidwell were frequently given certificates with lower numbers than others who joined on the same day.

The jury found specially that the defendant intended to defraud the plaintiff by the publications in the paper called " The Truth," offered in evidence; and that such representations were false; and were relied upon by the plaintiff in respect to paying each certificate in the order in which it was issued, and as to keeping a security fund in the bank.

They also found specially that defendant did pay members out of their order, and that plaintiff was injured thereby.

They further found specially that defendant did not honestly carry out the scheme according to the terms of the contract; and they returned a general verdict for plaintiff for $66.

Error is assigned upon the ruling of the court in permitting the certificates issued in the name of Johanna Timmerman, and the articles in the paper called " The Truth," to be read in evidence. This testimony was relevant to the issue made by the pleadings, and its admission was proper.

There was no error in permitting the cashier of the Fourth National Bank to testify how the account of the Union Trust Company stood at his bank in the year 1882.

In his articles in the Truth the defendant had designated

this bank as the depository of the Union Trust Company, and in the article he speaks of the sum retained out of the money to be paid on the certificate for the " security fund ; " stating that " the company has 1,450 members, and believes that its business is as reliable and safe as that of any bank in the State of Michigan.    We fix the contributions at $1.50, so that working men and women can receive the benefits of this association."    He led these working men and women to believe that he had a " security fund " for their protection, deposited in the bank, and it was proper to show whether this was true or not.

It is also assigned as error that the judge erred in permitting the alleged articles of incorporation of the Union Trust Company to be read in evidence.    There is no merit in this assignment.

The third assignment of error is as follows :

" The circuit judge erred in permitting W. W. Taylor to give evidence of what he had read in the books kept by the Union Trust Company."

From an inspection of the record, it appears that no objection was taken to the testimony of Mr. Taylor until the close of his evidence, and the following objection is recorded :

"All of which evidence was objected to by the counsel for the defendant, for the reason that it was incompetent and irrelevant, which objection was overruled by the court, and an exception taken."

To say the least, some of the testimony given by Mr. Taylor was competent, and all of it was relevant, and consequently an objection like the one taken cannot avail the defendant, and it was properly overruled.

There was no error in the charge of the court relative to the " security fund."    The circuit judge instructed the jury as follows :

" Did the defendant represent that the Union Trust Company was accumulating a security fund when in fact it was not, and when he knew it was not ; and, *second*, did he represent that certificates were being paid for in the order in which

they were issued when in fact they were not, and he knew they were not ?

"If you find that either of these representations was made, and was at the time untrue, and that they related to the then present manner of conducting the business of the corporation, and the defendant knew them to be untrue ; and that they were made for the purpose of inducing the plaintiff, among others, to put his money into the scheme ; and if you find that the plaintiff did in fact rely upon such representations ; and that they are material ; and that he paid any portion of the money which he paid in reliance upon the truth of such representations ; and that the corporation is now insolvent, and that the certificates are valueless,—he will be entitled to recover the amount which he paid on reliance of such representations.

"By the term 'representation' I mean representation by the word of mouth, or by printed documents or publications, made by the defendant ; so that if you find that the publications were made by the defendant in question, were made with the purpose of inducing individuals of the public to act upon them, these would constitute representations to the plaintiff, if they were brought home to him ; and if the plaintiff relied upon them, he would have a right to treat them as if they were made to himself.    *    *    *

"The claim of the plaintiff is that such was the fair import of the articles in question, to wit : That there was a security fund to be accumulated by the proportion of ten dollars from each certificate, and that in fact was not done ; and that the defendant knew the falsity of the statement when it was promulgated.

"The plaintiff further contends that the representations were contained in these papers, and in the certificates ; that the certificates were to be paid in the order in which they were issued ; and that this was not done, but, on the contrary, that certificates of a lower number were substituted for those of a higher number.

"It will be for you to determine, as a matter of fact, whether these representations were made, and whether they were true or false, and whether the plaintiff acted on them in paying his money, and how much of his money he paid, if any he paid, in reliance upon these representations ; for it would be so much of his money as he paid in reliance upon these representations, which are shown to be made thus fraudulently, that he would be entitled to recover.    The burden of proof rests on the plaintiff to establish his case by a fair preponderance of testimony."

This disposes of all the errors assigned, and we might well leave the case here. But the counsel for the defendant alleges a further reason in this Court at the argument why a recovery by the plaintiff should not be permitted. In his brief he says:

" Who would be fool enough to get up such a scheme, and, if such a fool was found, where would he get his patrons? Nevertheless, there was a set of fools that got up just that kind of a scheme, and they had about two thousand patrons; and about 500 persons drew out nearly three dollars for each one that they invested. But, of course, while 500 made a good investment, over 1,200 had to lose their money. The inclination to gamble is so great that the people never stop to consider the numbers that must be paid ahead of them until they run into hundreds. Then when they found that it is not so easy getting money for nothing, and there were about 1,200 to sympathize with each other, the clamor commenced. * * * Look at the whole transaction from any standpoint we may, and it was but a gambling enterprise, in which the originators were to be paid 20 per cent. of all the money paid in for holding the stakes. Only one in three who put their money into the pool could expect to get anything out. And when one-third who had put their money into the scheme had drawn out all there was in the pool, then to let the two-thirds who had drawn nothing say that they had been deceived, and that they could maintain an action for fraud and deceit for the money that had been paid to the one-third under the contract they had all entered into, would be rather hard on a portion of the gamblers.

"While the law does not favor any such scheme, at the same time it favors one class no more than another; and it says to both, it will leave them where it found them; that they have been engaged in transactions not recognized by it, and they must find their remedy where they found their authority for the enterprise."

We do not think that the facts in this case disclose a fraudulent scheme entered into between the plaintiff and the defendant to cheat the public, or any particular person, in which cases the courts will refuse to lend their aid to either party, but will leave them where they have placed themselves. The case presented is that so often met with,—of the sharp, unscrupulous swindler and the confiding dupe.

The scheme of Bidwell was to practice upon the credulity of the humbler and laboring classes, and under the pretense of a lawful incorporation, under which he held out the scope of a legal plan by which each other was " to help bear the burdens of life," he filched from them their hard earnings; and he cannot now be permitted to hold up the iniquity of his schemes as a shield to protect him in his possession of his ill-gotten gains, nor can he be permitted to say to his victims, as a defense in a court of justice:

" My scheme for fraud was so transparent that you ought to have seen through it, and it will be hard on me if I am compelled to repay the money to those whom I have defrauded."

The judgment is affirmed, with costs.

The other Justices concurred.