RICHARD E. TOWNSEND, Respondent, v. EDWARD G. FELT-
HOUSEN, Appellant.

1. FRAUD — SALE OF CORPORATE STOCK — CONDUCT OF TRIAL. Con-
siderable liberality in the exercise of the discretion of the court in the
conduct of the trial, in the method of examination and in the scope of the
inquiry is proper in an action for fraud in the sale of stock of a corpora-
tion promoted by the defendant for taking over his private business.

2. QUESTION FOR JURY. Where, in such an action, the evidence
might permit the jury to consider that the plaintiff was experienced in
such matters and availed himself of opportunities offered to inde-
pendently examine into the affairs of the corporation, still the question of
fraud is properly one for the jury, if they might also consider, with
reason, that there were facts in the formation and business operation of
the corporation which were falsely stated or designedly suppressed by
the defendant to his advantage in the negotiation for the sale of the
stock.

3. DAMAGE. The question of whether damage resulted to the vendee
from a purchase of corporate stock alleged to have been induced by
fraud, depends upon what was the actual value of the stock when he
negotiated for its purchase, and not upon what he accomplished there-
after under his management of the corporation.

4. EVIDENCE — LETTER WRITTEN BY PLAINTIFF TO DEFENDANT. On
the trial of an action for fraud in the sale of corporate stock, a letter
written by the plaintiff to the defendant after the sale may be admissible
on behalf of the plaintiff as showing the attitude of the parties, even if
it does not appear to be in response to anything from the defendant, when
it forms part of and was necessitated by a correspondence between the
parties and contains nothing necessarily amounting to a charge of mis-
conduct or to the making of evidence.

5. REPRESENTATIONS BY PROMOTER OF CORPORATION TO SUBSCRIBERS.
When, on the trial of an action for fraud in the sale of stock of a cor-
poration promoted by the defendant to take over his private business,
the defendant goes into the subject of the organization, and testifies
upon cross-examination that he informed subscribers for stock at what
figure a certain item of assets was taken over, the stockholders may
properly be asked, in impeachment of the defendant's testimony, what
information they received from him on the subject at the time of their
subscriptions.

6. REPRESENTATIONS AS TO VALUE OF CORPORATE PROPERTY. When
the question on trial involves the existence of an intention in the defend-
ant to defraud the plaintiff in the sale of stock in a corporation promoted
by the defendant to take over his private business, it is permissible to

inquire into the truth of the representations of the defendant, which concerned the value of the properties turned over to the corporation and which entered into the basis of a valuation of the shares of its stock.

*Townsend* v. *Felthousen*, 90 Hun, 89, affirmed,

(Argued June 23, 1898; decided October 4, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered October 28, 1895, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot* for appellant. The motion for a nonsuit at the end of the plaintiff's case, and at the end of the whole case, should have been granted, for there was no evidence of fraud, and no evidence that Townsend relied upon Felthousen's statement instead of his own judgment. (*Kountze* v. *Kennedy*, 72 Hun, 314; 147 N. Y. 129; *Belden* v. *Burke*, 147 N. Y. 542; Kerr on Fraud & Mistake, Am. Notes, 75, 76, 77, 82, 384; *Constant* v. *University of R.*, 133 N. Y. 640; *Morris* v. *Talcott*, 96 N. Y. 100, 107; *Shultz* v. *Hoagland*, 85 N. Y. 464; *Arthur* v. *Griswold*, 55 N. Y. 400; 68 N. Y. 294; 80 N. Y. 128; 89 N. Y. 122; 103 N. Y. 425; 112 N. Y. 454; *Nelson* v. *Stocker*, 4 De G. & J. 458; *Conybeare* v. *New Brunswick, etc., Co.*, 1 De G., F. & J. 578; *Nicol's Case*, 3 De G. & J. 387; *Cargill* v. *Bower*, L. R. [10 Ch. Div.] 502; *Pratt* v. *Philbrook*, 33 Me. 17; *Morehead* v. *Eodes*, 3 Bush, 121; 2 Pom. Eq. Juris. 379, 380, § 893, note 1.) The court should not have received evidence of Townsend and his bookkeeper, Krause, to show that, in their opinion, the supplemental entries in question were erroneous. (*Talcott* v. *Harris*, 93 N. Y. 571; *Learned* v. *Tillotson*, 97 N. Y. 11, 12; *Bank of B. N. A.* v. *Delafield*, 126 N. Y. 418; *Carpenter* v. *Ward*, 30 N. Y. 243.) It was not competent for Townsend and his witnesses to give their opinion about whether the books were correctly kept or not. (*Har-*

*ley* v. *Buffalo C. M. Co.*, 142 N. Y. 31, 38 ; *Kountze* v. *Kennedy*, 147 N. Y. 129.) The erroneous admission of opinions concerning bookkeeping and of evidence about the old books, and the manner in which the old corporation was formed, and the charge of the trial court thereon, so prejudiced the jury as to work injustice to the defendant, where the plaintiff had no real cause of action against him. (*Long* v. *Warren*, 68 N. Y. 432 ; *Slaughter's Admrs.* v. *Greson*, 13 Wall. 379 ; *Southern D. Co.* v. *Silva*, 125 U. S. 247 ; *Belden* v. *Burke*, 147 N. Y. 542.)

*Norris Morey* for respondent. There was no error in the refusal of the court to grant a nonsuit. There was an abundance of evidence to warrant the submission of the case to the jury and to have justified a verdict for a much larger sum than that rendered by the jury. (*White* v. *Benjamin*, 150 N. Y. 258 ; *Loos* v. *Wilkinson*, 110 N. Y. 195, 213 ; *Smith* v. *N. B. Soc.*, 123 N. Y. 85.) There was no error in the rulings of the trial court complained of in defendant's brief. The supplemental entries and all the books from which those entries were drawn, or ought to have been drawn, were in evidence, and the evidence of Townsend and Krause and the tabulated statements were admissible by way of condensing and summarizing those statements. (Greenl. on Ev. § 93 ; *Home Ins. Co.* v. *B. Warehouse Co.*, 93 U. S. 527, 547 ; *Von Sachs* v. *Kretz*, 72 N. Y. 548, 552.)

GRAY, J. This action was brought to recover damages for the fraud alleged to have been practiced upon the plaintiff by the defendant in the sale of shares of the capital stock of a corporation, known as the Buffalo Steam Pump Company. The plaintiff's attention had been attracted to an advertisement, in November, 1890, inserted by the defendant and offering his interest in the company for sale. He communicated with the defendant and, thereupon, negotiations were set on foot and conducted, in interviews and in correspondence, which resulted in the purchase of the defendant's 625 shares of the

stock, at the price of sixty dollars per share, in the latter part
of January, 1891. The complaint charges that this purchase
was induced by fraudulent representations on the part of the
defendant, as to the amount of the actual property and assets
of the corporation, exclusive of the value of the good will and
inclusive of the profits made in the previous two years of its
existence and of $25,000 paid in cash by the subscribers to an
issue of capital stock at the time of its organization. It was
charged, in substance, that the defendant undertook to, and
did, make representations and statements to the plaintiff to
show what was the condition of the company's affairs; what
its assets and liabilities and what the actual profits of the
business in the two past years, and that these representations
and statements made a false showing of these matters, and
were knowingly made and furnished by the defendant for the
purpose of deceiving the plaintiff as to the company's true
condition, past and present, and of thereby inducing him to
purchase the defendant's shares of stock. It was, also, charged
that the cash paid in, at the time of the organization of the cor-
poration, upon the sale of shares of its capital stock and which
was represented by the defendant as forming part of the cor-
porate assets, had been, in fact, at once withdrawn by him from
the business; as had been other moneys through the medium
of the company's notes, made by him as its president. The
defendant's answer was a denial of the various allegations of
the complaint, charging the defendant with the representa-
tions and statements complained of as being false and as hav-
ing been made to deceive the plaintiff into the purchase of the
stock, and it was alleged in defense that the plaintiff made the
purchase upon his own investigations and judgment, and not
because of any statements or representations of the defendant.

Upon the issue thus made the parties went to trial before a
special jury and a great mass of evidence was submitted, con-
taining the testimony and exhibits adduced on either side.
The jury awarded the plaintiff a verdict for a substantial
sum, though less than he had demanded, and the judgment
upon the verdict has been affirmed by the General Term. A

review of the case contained in the appeal book shows that there was sufficient support in the evidence for the verdict.

The corporation was formed in July, 1888, with a capital of $150,000, to take over the properties and business of the defendant's firm of Volker & Felthousen and defendant became its president. Shares amounting to $125,000 of the capital stock were issued to the members of the firm, in purchase of its properties, business and good will, and the balance was issued to subscribers for cash. At the time of the negotiations for the sale to the plaintiff of defendant's shares, the business had been going on for a little over two years and it was the plaintiff's contention that oral and written statements were made and exhibited to him, which exaggerated the existing assets of the company, diminished its actual liabilities and falsely represented that substantial profits had been made in the conduct of the business since its inception; and in support of this contention he submitted much evidence in the testimony of himself and of other witnesses. On the other hand, the defendant contended that there was no fraud intended, or practiced, in the transaction; that it was a case where the plaintiff did not rely on the defendant's representations, but upon his own judgment, after an inquiry and investigation into the company's affairs, and that in no material respect were the statements from books or accounts inaccurate, or calculated to deceive. In support of his position, he relied not only upon evidence given by himself and by other witnesses, but upon what the evidence of the plaintiff himself showed, as to his inquiries and examinations to ascertain and fix the actual value of the corporate stock. To discuss the evidence in this record would subserve no useful end. Considerable latitude was allowed by the trial judge, in its admission, to both sides and not without reason; in view of the more or less necessary range of the inquiry over the acts and transactions of the parties. An issue involving the honesty of the part played by the defendant, in procuring the plaintiff to purchase his shares of stock, and the extent to which reliance was, in fact, placed upon his statements by the

plaintiff, as an intending purchaser, justified a broader field of judicial inquiry. It was necessary, not only that the evidence should establish, or tend to establish, the falsity of the statements made, but, also, that they were known to be false and, to that end, facts and circumstances showing the defendant's means of knowledge and bearing upon the candor and integrity of his acts, in his connection with the corporation and the management of its business, were more freely admissible in evidence, in order that there might be furnished the basis for a decision as to the existence of an intention to dispose of his interest upon a fraudulent valuation. The latitude of examination, whether in the investigation of these facts and circumstances, or in those exhibiting the plaintiff's attitude to the defendant and the extent of his dependence upon his statements and of the materiality of the injury complained of, rested, largely, in the wise discretion of the trial court. A full revelation of facts concerning the formation and affairs of this corporation, organized as it was by the defendant to buy out the property and moneys of his old firm and thereafter, more or less, under his direction, could not prejudice him, if the representations and statements were honest on his part. His liability to respond to the plaintiff's claim depended upon an intention to deceive and damages resulting in consequence. If he made his statements and representations in an honest belief of their truth, he would not be liable in such an action. If it was a case of bad judgment, or of carelessness in statement, merely, there would be no element of fraud. It was for the jury, therefore, after being put in possession of all the facts and circumstances of the case, to pronounce upon the questions raised and to say whether the plaintiff made the purchase as the result of his own investigations and in the exercise of his judgment, as informed in material matters by himself; or whether the defendant had intentionally deceived him and had procured him to make the purchase, relying upon his statements, to his material injury. Their decision, affirmed by the General Term below, should be conclusive upon us as to the inferences to be drawn from the con-

flicting evidence, under the well-settled rule. The case was essentially one, in all its features, for the determination of a jury and we are unable to agree with the appellant in his assertion that there was no question of fact presented. It was not altogether a matter of bookkeeping, as to what were the actual assets or the liabilities of the corporation, or what it had earned in the conduct of its business; and whether, in their statement, the defendant had, by causing to be made improper, or false, entries in the accounts, or by suppressing items of liabilities incurred, exaggerated the corporate assets and diminished its liabilities and made the business to appear prosperous and productive, with the design to induce the plaintiff to buy his stock at a high figure of valuation, was a question upon the facts in evidence. It was so, too, as to whether he made representations as to the cash put into the business, upon organization, or as to the machines and tools added to the works since, and whether, if made as charged, they were intentionally and knowingly false. There were not wanting circumstances, capable of inferences unfavorable to the defendant's honesty of action in the transaction leading to the plaintiff's purchase; such as, for instance, a destruction of account books and papers by him, after the sale of his stock and during the plaintiff's absence, which included some of the corporate accounts, and in the making of supplementary entries in the books for the year 1890, after a trial balance had been made up for the plaintiff. None of these, or of the other circumstances, were, of themselves, conclusive upon the question of a fraudulent intent; but it was for the jury to say how far, under all the circumstances disclosed, they went to prove the perpetration of fraud.

The basis of all dealings is good faith and the plaintiff had the right to rely upon the truth of the defendant's statements in relation to the subject-matters of their negotiations, which were actually, or presumably, within his personal knowledge, and that there was no suppression or concealment, with a view to obtain an advantage over him. Whether he did so rely and whether there was misrepresentation, or concealment, by the

defendant, were the questions presented to the jury upon the evidence. As there was evidence which tended to establish fraud, the trial court, properly, decided to submit the case to the jury for their decision as to whether the fraud was proven. The jury might consider that the plaintiff was no novice in such matters and that he availed himself of opportunities offered to independently examine into the affairs of the corporation; but they might, also, consider, with reason, that there were, nevertheless, facts in its formation and business operation, which might be, and which were, falsely stated, or designedly suppressed, to the defendant's advantage in the negotiation for a sale.

Upon the question of whether damage was shown, it is sufficient to say that the valuation of the stock for purchase by the plaintiff was directly affected by the truth of the figures shown in the statement of the company's assets, liabilities and business. It was not a question of what the plaintiff succeeded in doing thereafter under his management; but of what was the actual value of the stock when he negotiated for its purchase.

The appellant urges that there were errors committed by the trial court in the rulings upon the trial. Some of these rulings related to the latitude of the examination or cross-examination of witnesses; but, as has before been observed, in such an action, there must be considerable liberality in the conduct of the trial, in the method of the examination, or in the scope of the inquiry. (*Loos* v. *Wilkinson*, 110 N. Y. 195; *White* v. *Benjamin*, 150 *ib.* 258.) We do not perceive that there has been any abuse of that discretion which is vested in the court in such actions; or that the defendant has been prejudiced by any of such rulings.

Objection was made to the introduction of a letter, written by the plaintiff to the defendant in September, 1891, upon the ground that it was a statement of the plaintiff in his own favor and not in response to any from the defendant. The letter related to the absence of an invoice book, which was missed about the time the defendant moved his personal papers from

79

the office, and it asked him to make an effort to find it; stating, incidentally, that the company was "at a loss to look up their business intelligently." While it does not appear to be in response to anything from the defendant, the parties had been in correspondence about a meeting; which the defendant, in a letter of a few days before, had declined to have with the plaintiff personally, and the witness testified that that letter occasioned the one in question. It being shown to be one in, and necessitated by, the correspondence, it became admissible to complete it. It showed the attitude of the parties and the statement of the fact of a missing book did not, necessarily, amount to a charge of misconduct, nor to the making of evidence.

Objection was made to inquiries of stockholders as to what information they had received from the defendant, at the time of their subscriptions, upon the subject of a patent account forming part of the assets turned over to the company by Volker & Felthousen. It was not so collateral to the issue as to be inadmissible; inasmuch as the defendant had gone into the subject of the organization of the new corporation and had testified upon cross-examination that he had informed the subscribers at what figure the patent account was taken over as part of the assets. The subsequent inquiry of the stockholders concerning this subject was proper in impeachment of the defendant's testimony. It did not raise a new issue; because it bore upon the general question of the composition and value of the corporate assets, as affected by the acts of the defendant; who was the promoter and manager of the corporation.

So also, objection was made to going into questions relative to the value of the property transferred by Volker & Felthousen to the new corporation. This inquiry, however antedating the period of the transaction in question, had been justified by the fact that, as part of the defendant's representations to induce the plaintiff's purchase of his stock, he showed an affidavit of Walker, a former bookkeeper of his firm, as to the value of the properties turned over to the

new corporation.    This was testified to by the plaintiff, and upon his cross-examination, the defendant caused the affidavit to be put in evidence, and subsequently, Walker, himself, was called as a witness for the defendant and examined upon the subject of the assets of the firm.    The question of the trial involving the existence of an intention in the defendant to defraud the plaintiff in the sale of the stock, it was not beyond the proper scope of inquiry to inquire into the truth of that portion of the representations, which concerned the value of the properties turned over by Volker & Felthousen to the new corporation and which entered into the basis of a valuation of the shares of its stock.    It tended to exhibit a scheme of the defendant to make such a showing of the corporate affairs as to enable him successfully to make a good sale of his interests in the corporation, which he had caused to be formed.    It was competent as evidence of what was done by the defendant to influence the plaintiff's mind in making the purchase of the stock and was made a factor in the transaction.    It is within the principle that a misrepresentation by the vendor as to the cost of property about to be sold is a material fact and naturally calculated to mislead the purchaser.    (*Sandford* v. *Handy*, 23 Wend. 260 ; *Fairchild* v. *McMahon*, 139 N. Y. 290.)

No other questions require discussion.    We think that no errors were committed in the trial, of a substantial or prejudicial nature.    The case was carefully and fairly tried, and submitted to the determination of the jury, and the judgment of the General Term, approving that determination, should be affirmed by us.

All concur.

Judgment affirmed.