SPOTTEN v. DE FREEST et al.

(Supreme Court, Appellate Division, Third Department.  November 16, 1910.)

1. FRAUD (§ 58*)—EVIDENCE.

Evidence, in an action against the secretary and the treasurer of a corporation for fraud in the sale by it to plaintiff of its stock, *held* sufficient to go to the jury.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55–59; Dec. Dig. § 58.*]

2. FRAUD (§ 30*)—PERSONS LIABLE.

The beneficiary of a fraud cannot consciously permit one to be victimized thereby and escape liability for the damage.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 30.*]

3. FRAUD (§ 59*)—MEASURE OF DAMAGES.

The measure of damages for fraud in the sale of stock is the difference between its value and what it would have been had it been as represented.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. § 59.*]

Appeal from Trial Term, Saratoga County.

Action by John B. Spotten against William W. De Freest and another.  From a judgment on a verdict directed for defendants after trial, and from an order denying a motion to set aside the verdict, plaintiff appeals.  Reversed, and new trial granted.

See, also, 128 App. Div. 934, 113 N. Y. Supp. 1147.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Edgar T. Brackett and Hiram C. Todd, for appellant.

Rockwood & Scott (Nash Rockwood, of counsel), for respondent Stover.

COCHRANE, J.  This is an action to recover damages for alleged deceit in the sale to plaintiff of capital stock of the De Freest-Stover Manufacturing Corporation.  This corporation was organized in April, 1906, with a capitalization of $50.000, of which $20,000 was preferred stock and $30,000 was common stock.  The accomplished object of the corporation was to take over the business and assets of the defendants herein who had been engaged as copartners in manufacturing and selling knit goods and other commodities and to continue such business.  The assets of the corporation thus acquired were, of course, subject to the partnership indebtedness which was to be paid out of the profits or revenue of the corporation.  Of the corporation thus formed, the defendant De Freest was the secretary and the defendant Stover was treasurer.  Both remained in the actual management and control of the corporate affairs as they had been in the affairs of the partnership.

Immediately after the corporation was formed, and with the knowledge and assent of the defendants, it made a contract with an attorney to sell its capital stock and gave to him exclusive control and management of such sale for the period of 10 weeks on certain conditions

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

specified in the contract. The attorney thus employed caused to be printed and distributed through the mail circular letters containing, among other things, the following statements, viz.:

"I find that in three years' business, starting with $800 worth of machinery and one employé, besides the partners, they now hold, own and have paid for nearly $21,000 worth of machinery; that the merchandise on hand is now inventoried and amounts to about $7,000, bills and accounts receivable about $2,300—to say nothing about the great value of the good will of the business, and the patents and trade-marks and mail order departments which, I believe, are worth more than $10,000. * * * A business that will start on $1,000 capital, $800 of which was spent for machines and $200 for materials, that can grow out of itself and pay all expenses and accumulate a property all paid for, value about $40,000, in three years is certainly a prosperous one. This is the history in brief as I find it after thorough investigation of the business of the former partnership of De Freest & Stover. I prepared the incorporation papers and by-laws and certificates of stock, both preferred and common, of this corporation and have invested in it myself, thus showing my faith as to its stability, and I can, and do, recommend the purchase of the preferred stock as a most excellent investment, and I predict that by January next the surplus earnings will be sufficient to pay as large a rate of dividend upon the common stock as is guaranteed in the preferred, and this is why Messrs. De Freest & Stover were willing to take for the purchase price of all their business, and assets $25,000 worth of common stock, which they have done."

The printer who printed this circular letter testified that, on the evening of April 20th, both defendants went to the printing office, and there waited until the work of printing copies of the letter which was then going on could be completed; that they stated that they wanted to take them to the attorney as soon as possible; and that 500 copies of the letter were at that time delivered personally to both defendants. The expense of printing was paid by the corporation. Accompanying the letter as it was distributed through the mail were copies of an affidavit of the defendant De Freest and of a newspaper article which are immaterial to this discussion.

The statements of fact contained in such letter as above set forth were some of them concededly and essentially false. The business had not grown out of itself and accumulated a property all paid for of about $40,000; but, on the contrary, the defendant De Freest as a witness testified that the debts of the partnership which were claims against the corporate property exceeded $21,000, of which over $7,000 was represented by a chattel mortgage covering the manufacturing machinery, and there was practically no merchandise or unmanufactured stock on hand except such as had been pledged as collateral security for indebtedness.

One of these circular letters was received in due course of mail by the plaintiff, who was a druggist. He thereupon opened negotiations with the defendants, with whom he had been previously acquainted, and had several interviews with a view to purchasing some of the stock. At the first of these interviews, according to his testimony, he informed both defendants of his receipt of the circular letter which was never at any time repudiated or disclaimed by them. At no time did they undeceive the plaintiff as to the fact of the indebtedness of the corporation. As the result of his interview and negotiations, the plaintiff finally sold his drug business, and with the proceeds purchased

50 shares of the preferred stock of the corporation of the par value of $5,000, which was accompanied with 50 shares of the common stock of the par value of $1,250, paying therefor $5,000. Carrying out an understanding between the parties, he was given employment by the corporation, and subsequently, while thus employed, he claims that he discovered the falsity of the representations which had been made to him concerning the indebtedness of the corporation and the value of its assets.

Other facts are relied on in support of the plaintiff's cause of action, but sufficient has been stated to indicate that the plaintiff established his right to have his case decided by a jury. In determining that question he is entitled to the most favorable inferences to be drawn from the evidence. It clearly appears that the statements made to him in the circular letter were untrue, and that they were of such a nature as to necessarily affect the value of the stock. The defendants must have known them to be untrue because the indebtedness chargeable against the corporate assets was primarily their own indebtedness. If the plaintiff relied upon these false statements and was deceived thereby, as the jury from the evidence might have found to be the fact, the liability of the defendants follows.

It is urged, particularly in behalf of the defendant Stover, that he was not responsible for the circular letter. The author thereof was ostensibly in the employ of the corporation. The president of the corporation, however, testified that Stover authorized or assented to such employment. No one was more interested than he in the sale of the stock the proceeds of which were to be used in capitalizing the corporation formed to take over a business in which he was engaged and to pay debts for which he was liable and in which corporation he became a prominent stockholder and officer. If the testimony of the printer of this circular letter had been believed by the jury, they might have found therefrom that Stover had personal knowledge of the contents of that letter, and, if he had such knowledge, he consented that it should be submitted to prospective purchasers and made the instrumentality of selling stock for his profit and advantage. The beneficiary of a fraud cannot consciously permit one to be victimized thereby and escape responsibility for the consequences. Miller v. Barber, 66 N. Y. 558. He cannot receive the fruits of a corrupt bargain, knowing at the time it was made of all the instrumentalities employed in its consummation, and then retain the benefits thereof without responsibility. He may not, under such circumstances, shield himself behind the mantle of corporate protection. The law looks beyond the form of a transaction and deals with its substance. We are not deciding that this defendant was guilty of fraudulent methods. Our decision merely is that the evidence was such that he should have been judged by the jury.

It is further contended that plaintiff has not sustained damages. The measure of damages is the difference between the actual value of the stock sold and what the value thereof would have been if the stock had been as represented. Krumm v. Beach, 96 N. Y. 398; Hubbell v. Meigs, 50 N. Y. 480; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301. Plaintiff's purchase included common as well as preferred stock.

Had there been no indebtedness, the common stock might have been as valuable as the preferred stock. It is not our province to estimate with accuracy or precision the exact amount of damages. That is the province of a jury in accordance with the rule of damages above stated. It is sufficient now to indicate that there was a proper foundation in the evidence upon which the jury could have based a verdict for damages in some amount, and, if in any amount, it was error to deprive them of the exercise of such function.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

