HENRY S. HOTALING, Plaintiff, *v.* A. B. LEACH & Co., INC., and Others, Defendants.

Municipal Court of New York, Borough of Brooklyn, Fourth District, February 16, 1926.

**Fraud — action for damages based on fraud in sale of corporate bond — firm of which individual defendants were officers purchased entire bond issue — defendants prepared and issued prospectus — plaintiff read prospectus and was personally told that bonds were first lien on property — eleven months after purchase corporation went into hands of receiver and bondholders realized approximately one-half of one per cent — plaintiff established fraud — both corporation and individual defendants are liable — plaintiff may recover difference between what he paid for bond and value of bond at time of receivership.**

In an action against a corporation and its officers, based on fraud, to recover damages suffered by the plaintiff in the purchase of a bond of another corporation, the plaintiff established all the elements of actionable fraud, since it appears that the defendant corporation purchased the entire issue of bonds of an oil company; that the individual defendants were officers of the purchasing corporation; that the defendant corporation and its officers issued a prospectus advertising the bonds, in which it was stated that the bonds were a first lien on the corporate property which aggregated approximately six times the amount of the bond issue; that the plaintiff read the circular and was assured by a salesman of the defendant corporation that the facts stated in the prospectus were true; that thereupon the plaintiff purchased the bond in question; that the prospectus was drafted by the individual defendants; that eleven months after the plaintiff purchased his bond the oil corporation issuing the bond went into the hands of a receiver and its property was sold for $50,000 and each $1,000 bond was allotted the sum of $5.34; that the defendants did not offer any explanation for the receivership or state any reason for the sudden and swift depreciation in the property of the oil corporation.

While the plaintiff was bound to prove intentional fraud as distinguished from mere breach of duty, still the evidence in this case, especially in view of the fact that the defendants offered no explanation for the sudden depreciation of the property of the oil corporation, justifies the inference that the defendants perpetrated a willful fraud on the plaintiff.

The language of a prospectus circulated to induce the purchase of bonds is to be interpreted by the effect it would produce upon an ordinary mind, and ambiguous language therein will not shield those who drafted the prospectus, and where the false representations are made that the bonds, as in this case, were secured by a first lien on all the corporate property, which was many times sufficient to meet the bonds, and purchasers are induced to buy, persons responsible for the fraud are liable.

The officers of the defendant corporation who were active in selling the bonds and in the preparation of the prospectus, as well as the corporation, are liable for the damages suffered by the plaintiff.

The plaintiff is entitled to recover as damages under the facts of this case the difference between the amount paid for the bonds and the amount allotted to him in the receivership.

Municipal Court of New York, February, 1926.        [Vol. 126

ACTION to recover damages for fraud and deceit.

*A. Gordon Murry* [*John B. Doyle* of counsel], for the plaintiff.

*Butler, Kilmer & Corbin* [*Max D. Steuer* of counsel], for the defendants.

BOGENSHUTZ, J.   This is an action to recover $980 for fraud and deceit inducing plaintiff to purchase a $1,000 bond of the National Oil Company, a New Jersey corporation.   The nature of plaintiff's cause of action is indorsed on the summons:   " For damages for fraud and deceit on the sale of ' One First Lien Seven per cent. Serial Gold Bond of the National Oil Company of New Jersey.' " The bill of particulars contains allegations charging defendants with having induced him to buy the bond by fraudulent representations made orally by a bond salesman and issuance of a printed circular in the form of a prospectus.   Defendants have nterposed the answer, " A general denial."   A recital of the substance of the proof is in order.   Plaintiff is a dealer in hay and grain.   Defendant A. B. Leach & Co., Inc., is a corporation organized under the laws of the State of New York, dealing in investment securities.   Defendant Arthur B. Leach is its president and one of its directors.   Defendant Wilfred E. Fulcher, also one of its officers and directors, was not served with process and does not appear in the action.   The relationship that existed between the National Oil Company and the corporate defendant, A. B. Leach & Co., Inc., began in September, 1919.   On September 27, 1919, the National Oil Company sent a communication addressed to the individual defendant Arthur B. Leach marked " Personal and confidential."   It contained a lengthy detailed statement of the National Oil Company's extensive property holdings in Mexico, Texas and Louisiana, consisting of high producing oil wells, operating equipment, refineries, terminals, pumping stations and pipe lines.   Of its being in control and operation of well going and prosperous shipyard, with a considerable number of ships built and others in course of construction, nearing completion, for use in the transportation of oil.   It contained a glowing recital of its main assets, to wit, oil tank ships, valued at nearly $5,000,000, property in Mexico, Texas and Louisiana valued at over $8,000,000, cash on hand $3,000,000.   In addition it gave a very wholesome recital of its past earnings and those anticipated.   This communication was sent pursuant to a verbal request made by the defendant Arthur B. Leach, in connection with the National Oil Company's proposed $5,000,000 bond issue, to be secured by a deed in trust in such form as to constitute them a first lien by mortgage or pledge on the property it then had, as well as on

property to be acquired from the proceeds of the sale of the bonds. After further negotiations the corporate defendant on October 15, 1919, offered to purchase the entire bond issue together with $3,750,000 of the National Oil Company's stock for the sum of $4,600,000. On November 13, 1919, the sale was consummated at the price offered. The corporate defendant thereupon offered the bonds and stock for sale to the public on its own account and benefit. For the purpose of selling the bonds, it prepared and issued its own circular prospectus, one of which was given to plaintiff. In addition to the statement that the bonds were a first lien on all of the property of the National Oil Company, it in substance represented that the value of its oil lands in Mexico, Texas and Louisiana was nearly $14,551,921; that it had acquired a surplus of $1,428,848; that it had net current assets equal to 135 per cent of the outstanding bond issue and net tangible assets equal to 438 per cent of the entire bond issue; that it had a fleet of vessels, and some in the course of construction in its shipyard in Texas, valued at $4,200,000, the vessels being insured for the benefit of the bondholders; that the capital stock of the company was represented by outstanding preferred stock of $2,471,049, and common stock of $14,555,918, and was paying regular dividends at the rate of eight per cent. When and how the corporate defendant was to pay the purchase price of the bonds and stock to the National Oil Company is not clearly disclosed by the evidence. Desiring to make an investment, plaintiff, about the middle of January, 1920, made inquiry at the office of the corporate defendant concerning his intention of making an investment in sound corporation bonds, and was referred to its bond salesman Carr. On his explanation of the recitals contained in the circular prospectus and his own further representations, including the assurance that the bonds were a first lien on all of the property then owned by the National Oil Company and would so attach to property to be acquired from the proceeds of the bond sales, plaintiff purchased the bond on January 23, 1920, paid $995.56 for it, and placed it in a safe deposit box. He was thereafter paid the semi-annual interest to November 1, 1921, amounting in all to $123.86. The National Oil Company defaulted in the payment of the next installment due May 1, 1922. A few months prior, about December, 1921, eleven months after plaintiff had bought the bond, the National Oil Company went into the hands of a receiver. About that time plaintiff received a communication from the corporate defendant advising and persuading him to deposit his bond with a committee designated by it, which he did. In February, 1924, he received a paper termed a certificate of new

security on payment of $150. What the security consisted of, or its value, is not disclosed by the evidence. In the meantime, on October 20, 1922, without notice to or knowledge by plaintiff, the property of the National Oil Company on which the bond issue had been represented to be a first lien, was sold under foreclosure by the trustee at a judicial sale conducted in Newark, N. J. It was sold to the highest bidder for $50,000. A confirmation of the sale was followed by a special master's report on distribution of proceeds. Each $1,000 bond was allotted and the holder entitled to receive $5.34. Plaintiff contends he first became aware of the facts and circumstances which he says constitute the charge of fraud and deceit, when about June, 1924, he read an article in one of the daily newspapers of a suit brought against the corporate defendant, concerning National Oil Company bonds, and a consultation held with his lawyer, resulting in the commencement of this action October 21, 1924. All of the documentary evidence in the record was offered by plaintiff. The oral evidence came from witnesses called by plaintiff, and came mainly from officers and agents of the corporate defendant. Defendants offered no proof bearing on or in explanation of what brought about the receivership and consequent sale of the property that had been represented as adequate security of the bonds issued, or what caused the highly valued property to so shockingly dwindle in value that on a sale in October, 1922, it brought only $50,000. Plaintiff contends he has established the charges made by a fair preponderance of evidence, that the representations made by defendants were recklessly false in substantially all phases, and he should be awarded a recovery of damages measured by the difference in value between what he paid for the bond and its actual value on the date of its purchase with interest, less deduction of the amount of interest received on account of the bond. Before considering the force of the proof and deciding the issue of fact it becomes necessary to be mindful of the rules of law that govern this litigation. This being an action at law to recover damages for fraud and deceit plaintiff is bound to prove all of the essential elements necessary for a recovery, material representations, their falsity and defendants' knowledge thereof, plaintiff's reliance thereon and deception and resultant damage. (*Kountze* v. *Kennedy*, 147 N. Y. 124; *Ochs* v. *Woods*, 221 id. 335; *Haessig* v. *Gregory*, 197 App. Div. 111; *Reno* v. *Bull*, 226 N. Y. 546.) Plaintiff is bound to prove intentional fraud as distinguished from a mere breach of duty such as misjudgment, or omission to use due care. (*Reno* v. *Bull*, *supra; Bell* v. *James*, 128 App. Div. 241; affd., 198 N. Y. 513.) Fraud is a broad issue. It is not presumed, and must be established by affirmative evidence.

(*Pryor* v. *Foster*, 130 N. Y. 171.) It seldom can be proven by direct evidence, and oftentimes is dependant upon many circumstances, some of which, when separately considered, may appear to be immaterial or doubtful, but when considered as a combination, they may not only be material but have great probative and persuasive force in establishing the charge. (*Taylor* v. *Guest*, 58 N. Y. 262, 266; *White* v. *Benjamin*, 150 id. 258, 265; *Hickok* v. *Cowperthwait*, 134 App. Div. 617.) It is difficult to formulate and establish a fixed rule of law for the government of cases of this character because it seldom occurs that two cases are found with the same state of facts existing. The rule seems to be that each case is dependent upon its own particular facts, mindful that the law does not countenance fraudulent statements or misrepresentations made for the purpose of deceiving an intending purchaser. (*Townsend* v. *Felthousen*, 156 N. Y. 618; *Timmerman* v. *Bidwell*, 62 Mich. 205; *Castle* v. *Bullard*, 23 How. [U. S.] 172, 178.) In other words, fraud is established when facts are proven from which it results as an unavoidable inference. (*Matter of Smith*, 180 App. Div. 669, 674; *Paxton* v. *Boyce*, 1 Tex. 317; *Fottler* v. *Moseley*, 179 Mass. 295.) When such evidence is furnished the burden of coming forward with evidence repelling the inference is cast on the party to whom the fraud is imputed. (*Townsend* v. *Felthousen, supra; Taylor* v. *Manning*, 190 App. Div. 559; *Matter of Smith, supra.*) Of course the burden of proof of establishing every essential element of fraud by a fair preponderance of evidence remains throughout on the party who asserts it. (*Morris* v. *Talcott*, 96 N. Y. 100.) As a general rule mere expression of opinion as to value cannot be made the basis for an action for fraud and deceit. (*Ellis* v. *Andrews*, 56 N. Y. 83; *Titus* v. *Poole*, 145 id. 414, 425; *Merry Realty Co., Inc.*, v. *Martin*, 103 Misc. 9, 13; affd., *sub nom. Merry Realty Co., Inc.*, v. *S. & H. R. E. Co., Inc.*, 186 App. Div. 538; *Van Slochem* v. *Villard*, 207 N. Y. 587.) The rule is otherwise where the misrepresentations relate to some specific extrinsic facts which materially affect the value and in such cases, if the fact is peculiarly within the seller's knowledge, and the intending purchaser has no knowledge whatsoever, or has not equal means of knowing value, and is induced by the seller to forebear making inquiry, and the statements are made with knowledge of their falsity, or with what the law regards as its equivalent thereto, reckless statements, with the intent that the purchaser should act in reliance thereon, which the purchaser does to his damage. (*Koun'ze* v. *Kennedy, supra; Merry Realty Co., Inc.*, v. *Martin, supra; Von Au* v. *Magenheimer*, 126 App. Div. 257; affd., 196 N. Y. 510;

54

*Ottinger* v. *Bennett,* 203 id. 554, revg. 144 App. Div. 525 on dissenting opinion of MILLER, J.) Where a prospectus is circulated to induce the purchase of stock or bonds in a corporate enterprise, the language and material matters referred to and explained in the prospectus are to be interpreted by the effect it would produce upon the ordinary mind, and ambiguous language therein will not shield the promoters on a claim that no fraud was intended. (*Downey* v. *Finucane,* 205 N. Y. 251; *Bystrom* v. *Villard,* 175 App. D v. 433; 188 id. 964; affd., 230 N. Y. 588; *Hayward* v. *Leeson,* 176 Mass. 310; *Wiser* v. *Lawler,* 189 U. S. 260.) The law looks beyond the form of a transaction and deals with its substance. (*Spotten* v. *DeFreest,* 140 App. Div. 792.) It does not permit deceit to be practiced by trick and device. (*Von Au* v. *Magenheimer, supra.*) In the sale of bonds, as in other negotiable instruments issued by corporate bodies, false representations that the instruments are secured and safeguarded by valuable collateral, which representations are made as an inducement to purchasers to buy, the persons responsible are liable in damages to one who suffers loss. (*Currier* v. *Poor,* 155 N. Y. 344.) In the instant case plaintiff sought truthful and reliable information before he bought the bond. That he was impressed and induced to buy, because he believed in the truthfulness of the representations contained in the circular prospectus, as well as in the oral statements made by the salesman Carr, is fully established by the evidence. Defendants owed a duty to plaintiff to speak the truth, not literally in words, but truthfully in substance. They were so obligated when they undertook to recite and explain the condition of the National Oil Company as a highly developed and prosperous concern; of its being possessed of highly valued properties and large assets; in giving assurances that the bonds were safeguarded by being a first lien on the valuable property then owned by that company, as well as on property to be purchased from the proceeds of the bond sales. They were bound not to deceive either by the suppression of the truth or by making statements that were calculated to deceive. They are to be judged by what they intentionally induced plaintiff to think, not what they literally said. (*Von Au* v. *Magenheimer, supra; Benedict* v. *Guardian Trust Co.,* 91 App. Div. 103; affd., 180 N. Y. 558; *Downey* v. *Finucane, supra; Bystrom* v. *Villard, supra; Greene* v. *Mercantile Trust Co.,* 60 Misc. 189; affd., 128 App. Div. 914.) Plaintiff charges both the corporate defendant, as well as its president, the defendant Arthur B. Leach with liability. The promoters, officers and directors as well as the corporation are liable for the injurious consequences suffered by one relying and acting on a false

prospectus circulated, if they participated in the preparation and circulation of it. (*Morgan* v. *Skiddy*, 62 N. Y. 319; *Churchill* v. *St. George Develop. Co.*, 174 App. Div. 1; *Downey* v. *Finucane, supra; Bystrom* v. *Villard, supra.*) That the individual defendant Arthur B. Leach not only had personal knowledge of the issuance of the circular prospectus, but was in fact the moving spirit in its preparation and circulation to the public, is fully established by the evidence. Consequently he is individually liable as a promoter for any false statement contained in it. (*Morgan* v. *Skiddy, supra; Townsend* v. *Felthousen, supra; Spotten* v. *DeFreest, supra; Laska* v. *Harris*, 215 N. Y. 554.) The corporate defendant through negotiations conducted by the individual defendant Arthur B. Leach, its president, and other officers and directors, bought the entire bond issue as well as the capital stock of the National Oil Company for its own account for resale for its own profit. It is consequently liable for any misrepresentations made by its salesman Carr, as well as for those contained in the prospectus and issued to prospective purchasers. (*Fairchild* v. *McMahon*, 139 N. Y. 290; *Currier* v. *Poor, supra; Laska* v. *Harris, supra; Churchill* v. *St. George Develop. Co., supra.*) Defendants led and induced plaintiff to buy. They made the selling of securities their line of business. They were experts in the line of knowing values. Plaintiff was not. These and the many other circumstances negative defendants' contention that the representations as to values were mere expression of opinion. (*Powell* v. *Flechter*, 18 N. Y. Supp. 451; *Kilgore* v. *Bruce*, 166 Mass. 136.) It, therefore, becomes necessary to decide the falsity of the representations that form the basis of this action. I have made an exhaustive study of the evidence and find that the circular prospectus contained material misrepresentations far beyond what ordinarily might be considered mere expression of opinion. From every fair and reasonable inference deducible in the light of every material circumstance that attended the entire transaction, I have further reached the finding that substantially all of the representations were false and untrue; that defendants knew they were false when they issued the prospectus; that they were made to deceive; that plaintiff in reliance on their being true made his purchase and suffered damage. It seems to me that it would be a supererogatory performance to recite in detail the items of evidence in the voluminous record justifying such finding. It is sufficient to state that it is supported by an abundance of reasonable and probable evidence. I have arrived at this result without doubt or hesitation, especially in view of defendants' failure to offer testimony bearing on, or in explanation of what brought about the receivership eleven

months after plaintiff bought the bond, and what caused the highly valued property holdings to dwindle so that on the sale of the property on which the bond issue was represented to be a first lien had fallen in value so that only the sum of $50,000 was realized, resulting in the award of $5.34 as the value of plaintiff's bond. Every sound consideration of business morality seems to call for holding such parties accountable under such circumstances. (*Canadian Agency, Ltd.,* v. *Assets R. Co., No. 1,* 165 App. Div. 96, 102, 103.) This leaves for consideration what damage has plaintiff suffered? Defendants stress the contention that plaintiff is not entitled to a recovery because he failed to prove that there was any difference between the price he paid for the bond on the day of purchase and its actual intrinsic value on that day. Under the rule laid down in *Reno* v. *Bull* (226 N. Y. 546), I am satisfied that a substantial difference has been shown. I know of no rule that prescribes what evidence is necessary to prove a difference in value. Surely plaintiff would not have paid $995.56 for a bond worth only $5.34. The selling price of the bonds was fixed by defendants. Plaintiff was induced to buy at that price through fraudulent representations as to the value of the property on which the bonds were declared to be a first lien. In view of the finding that defendants perpetrated the fraud on the day they sold the bond to plaintiff, the natural inference arises that on that day the highly represented property values were in fact negligible, or of little value. This is fairly established through subsequent happenings, including among others the unexplained receivership and sale under judicial decree of the property on which the bonds were a first lien, realizing the sum of $50,000, or $5.34 for each bond, a difference of $974.66; in other words, in a situation such as this the events subsequent are of some account in determining the value of a bond at the time of its fraudulent sale. As was stated by Mr. Justice HOLMES in *Whiting* v. *Price* (172 Mass. 240), " subsequent events may be likened to the coming out of a latent disease existing in a horse at the time of a fraudulent sale." While the exact amount of damage suffered in cases of this kind cannot be estimated with accuracy or precision, every inference in the present instance indicates that plaintiff's recovery should be the difference between the amount fixed as the actual selling price of the bond, $980, and $5.34, the actual value, to wit, $974.66. I find that plaintiff's recovery should be measured accordingly. Plaintiff is entitled to recover $974.66, with interest from January 23, 1920, to date of trial, less $123.86 interest paid him on the bond to November 1, 1921. Judgment for plaintiff for $1,184.97.