THOMAS MARSH, appellant,

*v.*

MARY E. BUCHAN, respondent.

1. An agent who assumes to act for the vendee in a sale of land, is bound to disclose to the vendee his existing agency for the vendor, and such failure to disclose, is a fraudulent concealment of a material fact.

2. A written contract of sale, procured by the agent, without this disclosure, will not be specifically enforced, even though the price is shown to be a fair one and the vendor is ignorant of his agent's fraud.

On appeal from a decree advised by John R. Emery, one of the advisory masters, who filed the following conclusions:

This is a bill by a purchaser against a vendor, for the specific performance of a written agreement to convey lands.

The execution of the agreement is admitted by the answer, and also the complainant's payment of the portion of the purchase-money agreed to be paid on the execution of the agreement. The complainant's readiness to comply with the terms of the agreement on his part, at the time and place provided for in the agreement, is proved.

The defendant failed to attend at the time and place appointed for the delivery of the deed, and the complainant's attorney then sought her at her residence, and tendered to her the balance of the cash payment, together with a bond secured by a mortgage on the premises for the balance of the purchase-money, as provided for in the agreement, demanding a deed for the premises.

The defendant declined to accept the money or the bond and mortgage, and also refused to deliver the deed.

On August 17th or 18th, 1887, and about ten days previous to the time fixed for the delivery of the deed (August 29th, 1887), the defendant, through her attorney, notified the complainant that she would not carry out the agreement, and tendered to the complainant the amount of the money paid on the execution of the agreement, which the complainant refused to accept.

The contract in question was signed by one Charles H. Sleight, a real estate broker, as the agent of the complainant, and the ground on which specific performance is now resisted is, that the contract was procured through the fraudulent conduct of Sleight, the agent of the complainant.

The fraudulent conduct is alleged to have consisted in false representations made by Sleight to the defendant, and also in his fraudulent concealment of facts.

[The defendant alleged that, on Sleight's solicitation, she appointed him as her agent to sell the property for her, and that Sleight solicited and accepted this appointment without disclosing to her that he was at this time also the agent of the complainant.—REP.]

\*    \*    \*    \*    \*    \*    \*    \*    \*

[Here follows a statement of the facts as established by the pleadings and evidence in reference to the execution of the contract, and Sleight's connection with it.—REP.]

\*    \*    \*    \*    \*    \*    \*    \*    \*

Upon this statement of the facts and evidence, my conclusions are :

*First.* That Sleight, having been originally employed by the purchasers, must be considered as primarily their agent, although he afterwards acted, or assumed to act, as the agent for the defendant.

This is the rule laid down by *Story Ag.* § *31*, in reference to those brokers who are for some purposes treated as agent for both parties, and certainly no other rule could safely be applied to real estate brokers, where the very nature of their employment

is such as to imply a reliance on their skill and integrity in the interest of the original employer, and is also such as generally to preclude a subsequent employment in the adverse interest. And in this case, it makes no difference whether the original employment by the purchasers was a general employment to purchase, as alleged in the bill, or a special employment to obtain the prices, for, in the obtaining of prices, the broker is interested to obtain the lowest prices from the vendor, and it is his right and duty, by all fair means, to obtain the lowest prices. He also becomes interested in bringing about a sale to his employers, to the exclusion of all other purchasers.

*Second.* Being the agent of the purchasers at the time of his application to the defendant, Sleight had no right to accept from her the employment as her agent to sell the property, without a disclosure to her of his agency for the purchasers, and his failure to make this disclosure to the defendant, before she signed the written contract, was, on his part, a fraudulent concealment of a material fact.

In some instances of sales and purchases by real estate brokers, there is no legal or practical impediment to their acting as brokers or agents for both parties, but in such cases it is settled, that there must be the fullest disclosure to each of the principals that the broker is acting as agent for both, in order that the principals may deal at arms-length. Otherwise the principal, ignorant of the agency for the other, may question the transaction. *Whart. Ag.* §§ *244, 366.*

In *Farnsworth* v. *Hemmer, 1 Allen 494,* it was held that a broker employed to sell real estate could not subsequently accept a commission from a purchaser, and that, having received this, without disclosure to his original employer, the seller, he could not recover his commission from his original employer after the sale was effected; and it was further held, that a custom of brokers so to act for both parties, without disclosure, was so unreasonable and contrary to good morals and sound policy that it could not be sustained, and proof of it was inadmissible.

This case was approved in *Rice* v. *Wood, 113 Mass. 133 (1873),* where it was held that a broker acting for both parties in

effecting an exchange of real estate, cannot recover compensation from either, unless his double employment was known and assented to by both.

In the present case, I am inclined to think that Sleight was absolutely precluded from accepting the agency for defendant, because he could not, in justice to his original employers, and with a due regard for their interests and rights, disclose that he was acting for all of these associates, or disclose what he knew of their scheme of purchase and improvement. All the persons interested in the purchase, as appears by the bill and their evidence, considered it of vital importance that their plans should not be disclosed, as this might lead to a rise in prices.

They had the undoubted right, I think, by themselves or by their agent, to purchase without making such disclosure, and the mere failure to communicate the scheme to the defendant was no fraud upon her which would entitle her to refuse to perform the contract. But the very fact that the agent of the purchasers knew of the association, and knew something of the scheme, and knew, as he must have known, that silence as to the scheme of purchase by these associates was then of importance to the proposed purchasers, made it impossible for him fairly, openly and in entire good faith, to accept an agency from the sellers.

That Sleight's knowledge as to the proposed plan, however limited it might have been, would have been of some advantage to the defendant, if disclosed, is evident, and he must have known, in assuming the agency for her, that he could not deal openly and fairly with her by disclosing what he knew of the desire of his employers to purchase and of their general scheme for purchase. The bill leaves it open for inference that he knew all about the plan for purchase and improvement, as it makes no qualification or denial of his knowledge, but justifies his concealment of it, on the ground that, as the agent of the complainant, he was not bound to disclose.

That Sleight's agency for the purchasers, even if restricted to the mere obtaining of prices, turned out in this instance to be incompatible with his assumption of the confidential relation of agent to the seller, is made entirely clear by Sleight's statement,

that at the time of assuming this agency for the defendant, and in fixing the price, she told him that she wanted a good round price. This was a confidential statement by a principal to an agent, which would scarcely have been made to a person supposed to be an agent of the purchasers, whose duty it would be to disclose it to the purchasers. Such communication, if made, would undoubtedly result in fixing a less sum for the offer.

*Third.* The mere signing of the contract by Sleight as the agent of Marsh, one of the purchasers, did not operate as a disclosure to the defendant of his agency for the purchasers during the negotiations and at the time the terms were verbally agreed on.

The negotiations were conducted, and the terms of sale agreed upon, while Sleight was still acting toward the defendant in the confidential relation of agent, and it is also evident, I think, that in accepting the terms offered, the defendant was, in fact, influenced by the statements and opinions of Sleight, made to her as his principal, that the price was a fair one and that he could do no better. And the defendant, before signing a written contract binding herself to carry out the terms verbally agreed on while this confidential relation existed, was entitled, I think, to the full disclosure of the relations of Sleight to the purchasers, which existed during the negotiations, and at the time when the terms were fixed.

There is no proof of any other information or notice by Sleight than the production of the contract with his signature as Marsh's agent, and the question is, of what facts was this signature notice to the defendant, under the circumstances of the case. It was undoubtedly notice that in the execution of the written contract, Sleight acted as the agent for Marsh, one of the purchasers, but, after the terms had been agreed upon between the defendant and the purchaser, and the reduction of these terms to writing in a form to bind both parties had also been agreed upon, Sleight might, so far as the mere execution of the contract was concerned, have fairly acted as the agent of both parties, if specially authorized by each. Such special authorization to sign the contract for the principal is necessary, and, as has been held in several cases

in this state, a broker to sell is not, by virtue of such employ-
ment, authorized to sign a written contract for his principal.
See *Morris* v. *Ruddy, 5 C. E. Gr. 238; Milne* v. *Kleb, 17 Stew.
Eq. 378.*

It seems to me to follow as a corollary to this rule, that a
mere authority to sign a contract as agent, is not so necessarily
connected with the previous negotiations as to make it of itself
sufficient notice, that in such negotiations also, the agent signing
the contract was the agent for the same parties. (In this case
there is no denial of the fact that, as to the defendant, Sleight
assumed in the negotiations to act as her agent.) Nor can the
signature to the contract be effective as notice of this previous
employment for the purchasers, on the theory that the defendant
was by this signature put upon inquiry as to the previous rela-
tions of Sleight to the purchasers, and is therefore to be con-
sidered as informed of all facts which she would have learned by
a truthful answer to such inquiries. This rule, as I understand
it, could be applicable only to persons dealing at arms-length,
and not to the case of those dealing under the influence of con-
fidential relations.

In view of the relations between Sleight and the defendant
previous to and at the time of the contract, it was not, I think,
the defendant's duty to suspect and inquire, but it was Sleight's
duty to disclose and explain, and the defendant should not be
prejudiced by a failure to suspect that Sleight's signature of the
contract, as agent for the purchaser, was an indication that he
had all along been acting under an adverse appointment.

*Fourth.* The fact that the price to be received for the property
seems to be a fair one, will not, so far as Sleight is concerned,
prevent the defendant from setting up his fraudulent conceal-
ment to resist specific performance of the contract.

The case *Young* v. *Hughes, 5 Stew. Eq. 372,* is direct authority
upon this point. Mr. Justice Magie (*p. 384*) declaring the rule
to be, that the effect of the agent's concealment and neglect of
duty in that case did not, so far as the agent was concerned,
depend at all upon the question whether or not the neglect was
injurious to the principal, and that the rule was one founded on

sound policy, not based on meditated fraud or actual injury. It was, as he says, established to prevent the possibility of injury in such cases.

The question upon this branch of the case is, whether the contract was fairly and openly obtained by Sleight from the defendant, and if it was not so obtained, it is evidently no defence or answer that the price was fair. The defendant cannot be obliged to sell her property for what others consider or prove upon a trial to be a fair price, if her consent to take that price was procured by unfair or fraudulent means.

The principals in this case, being ignorant of any fraudulent conduct on the part of their agent Sleight, in procuring the contract, the remaining question is, whether the misconduct of the agent is a bar to the complainant's right to a specific performance of the contract. Upon this point I agree with the counsel of the complainant, that the case of *Young* v. *Hughes, 5 Stew. Eq. 372*, is not applicable, for the reason, that in that case, the court found, as a matter of fact, that the purchasers incited and were partakers in the misconduct of the agent.

But in the examination of the case, I find some New Jersey cases not referred to by either side on the argument, which seem to establish the rule, that where there is fraud in the conduct of an agent in effecting a sale, of which fraud his principal is ignorant, the vendee, although he cannot sue the principal for the fraud of the agent, may even, as against an innocent principal, rescind the contract and reclaim the money paid.

These cases are *Kennedy* v. *McKay, 14 Vr. 288*, followed in *Decker* v. *Fredericks, 18 Vr. 469, 472; Hutchinson* v. *Warwick, 17 Vr. 200, 203; Titus* v. *Railroad Co., 17 Vr. 393, 420*. The case was also approved in *Keen* v. *James's Executors, 12 Stew. Eq. 527*. See, especially, opinion of Mr. Justice Dixon, at *pp. 540 and 544*.

If the complainant's counsel desires, I will hear further argument upon this branch of the case, with special reference to the applicability of these cases. I will reserve decision upon this point to allow application for argument.

Conclusions of the advisory master on point reserved, as stated above:

After further argument by counsel upon the question reserved in the conclusions heretofore filed, I am of opinion—

*Fifth.* That the complainant and his associates, although innocent of any participation in the fraudulent conduct of their agent Sleight, in effecting the sale and procuring the execution of the contract by the defendant, are not entitled to the specific performance of the contract—

1. Because I understand the general rule to be settled in this state, at law as well as in equity, that a contract procured by the fraud of an agent may be rescinded, even as against an innocent principal. The general principle was recognized and acted on by the court of errors and appeals in *Keen* v. *James's Executors, 12 Stew. Eq. 527.* In this case a sale of bank stock to the complainant, made by Baldwin, one of the three executors of an estate, was rescinded, because of the fraudulent conduct of Baldwin in failing to disclose the condition of the bank, of which he was also the cashier, and in allowing the purchaser to purchase the stock on the faith of the public and official declarations he had made as to its condition, although these representations were known to him to be utterly false. The other executors had no knowledge of the condition of the bank. It is true, as insisted on by complainant's counsel, that in the present case the fraud is of a different character, but the principle of *Keen* v. *James* is applicable to fraud of any character on the part of the agent, in procuring a contract for an innocent principal. Mr. Justice Dixon says (*p. 544*): " The fraud of the agent affects the principal for the reason, that every principal impliedly warrants the integrity of his agent, at least so far as to prevent his retaining the fruits of the fraud, and if the agent, in transacting his employer's business, has unlawfully effectuated a fraudulent design, it is unimportant whence the elements of his corrupt purposes were derived."

The cases at law, *Kennedy* v. *McKay, 14 Vr. 288,* and *Decker* v. *Fredericks, 18 Vr. 469,* were actions by vendees against inno-

cent vendors, based upon the fraudulent representations of the·
agents of the vendors in effecting the sale, and actions in which
the vendors, without attempting to rescind the sale, sought to·
hold the innocent principals liable in damages for the deceit of
the agent. It is true, as pointed out by counsel, that the precise
question involved in these cases was. not the right of rescission
against innocent vendors, but was the right to recover damages·
against the innocent principal without rescinding. But, in the·
decision of the question involved, Chief-Justice Beasley, in *Kennedy* v. *McKay*, discussed the whole subject of the rights of the·
vendee against the innocent vendor in such cases, and his statement, that the remedy against the innocent vendor is a rescission·
of the sale, and not an action for the agent's fraud, has been ever·
since accepted as settling this principle in this state. See *Decker·*
v. *Fredericks, supra*, and *Keen* v. *James, 12 Stew. Eq. 540.*

In fact, the doctrine that an innocent principal cannot avail
himself of a bargain obtained by the fraud of his agent, seems
to have been settled since Lord Holt's time (see *Whart. Ag.* §
*711*), and the only question open to dispute in later cases has·
been, whether the principal may also be sued for the deceit of
his agent.

2. The present case is one where the principal applies for a·
specific performance of the contract procured, as I have found,
by his agent's fraud.

· This relief, being purely equitable, will be denied where the·
situation of the parties requires perfect good faith and openness·
of dealing in making the contract, and these have not been,
observed.

In *Hesse* v. *Briant, 6 DeG., M. & G. 623*, this rule was laid·
down as applying to a case where a solicitor was acting as agent
for both vendor and purchaser, and the court of errors and
appeals, in *Young* v. *Hughes, 5 Stew. Eq. 372, 385*, approved
the rule of this case. In the present case, it seems to me, that
the defendant, before reposing in Sleight the confidence of
employing him as her agent, and before making this contract,·
had not received that fair, open disclosure of Sleight's relation
to the vendors to which she was entitled, and that on this·

Marsh *v.* Buchan.

account also, the equitable relief of specific performance should be denied.

I cannot agree with complainant's counsel in his contention, that Sleight's duty to disclose to the defendant his agency for the purchasers, did not arise until *after* the acceptance of his employment as her agent, and was, therefore, only a breach of his duty to her as her agent, for which she must look to him alone, and for which the complainant should not be punished by refusal to decree the execution of the contract. Sleight's duty, as I understand it, was to disclose his relations with the purchasers before accepting the agency from defendant.

It may be that Sleight is responsible to the defendant for his failure to act faithfully as her agent, but it is also clear, that as Sleight, after his employment by defendant, was still acting as the agent of the complainant in procuring the contract, the complainant must also be responsible to the extent of not being able to reap the benefit of his agent's fraud.

No question was raised by the defendant as to whether, in view of the evidence showing the joint interest of Eppley and Pierson with complainant in the contract, a decree for specific performance could be made on a bill filed by the complainant alone, and I have not considered this question.

I will advise a decree dismissing the bill, with costs.

*Mr. Leon Abbett,* for the appellant.

*Mr. John W. Taylor* and *Mr. Franklin M. Olds,* for the respondent.

PER CURIAM.

The decree affirmed, for the reasons given by the advisory master.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, MAGIE, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, SMITH, WHITAKER—12.

*For reversal*—None.