MERITAS REALTY CO. v. FARLEY et al.

(Supreme Court, Appellate Division, Second Department. March 5, 1915.)

VENDOR AND PURCHASER (§ 37*)—FRAUDULENT REPRESENTATIONS—MATTERS OF FACT OR OPINION—VALUE.

A vendor, an experienced real estate agent, took the purchaser to see certain lots. He represented that the lots which he was offering for $640 were worth $700; that the price had been advanced to $700, and would shortly be advanced again; that the purchaser would never have to pay a purchase-money mortgage, as he would sell the lots for the purchaser at a profit of $1,000 before the mortgage became due. *Held* that, though the statements by the vendor as to value were false, the vendor, not having resorted to trick or artifice to prevent independent inquiry by the purchaser, cannot be held liable for his misrepresentations, particularly as most of them related, not to facts, but to matters of opinion, which could only be determined by future events.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 54–60; Dec. Dig. § 37.*]

Rich, J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Nassau County.

Action by the Meritas Realty Company against Edson J. Farley and another. From a judgment for defendants (85 Misc. Rep. 321, 147 N. Y. Supp. 503), plaintiff appeals. Reversed, and judgment directed for plaintiff.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

George R. Salisbury, of Saratoga Springs, for appellant.

Edson A. Hayward, of Oneonta, for respondent Edson J. Farley.

CARR, J. This action was brought to foreclose a purchase-money mortgage on seven lots of land at Westbury, Nassau county. The defendant counterclaimed, asking relief that the bond and mortgage be declared void, that the sale of the lands to him by the plaintiff be vacated, and that he recover all moneys paid by him on the contract of sale, together with all sums paid as interest on the bond and mortgage, and for costs of the action. The trial court sustained the counterclaim and granted the defendant the relief he asked for. The judgment is appealed from, on the ground that it is against the weight of evidence on the facts, and is erroneous as a matter of law on such facts as the defendants may be deemed to have established.

The defendant Edson J. Farley was a Baptist clergyman residing at Oneonta, N. Y., where he was pastor of a church. One Narber, who was the president and agent of the plaintiff, came to Oneonta to interest possible buyers of lots located in a tract of land at Westbury, Nassau county, owned by the plaintiff. There he met one Helm, with whom he discussed the matter of selling these lots, and whom he interested in the project as an agent, on a commission of 10 per cent. on sales to be effected by Helm. The latter introduced Narber to the defendant Farley. The reverend defendant appears from his own testimony to have been a man of some experience. He was the executor of his father's estate, and as such had a number of mortgages under his control. He himself had bought some lots of land in Washington, D. C., and in Brooklyn, N. Y., on a venture which had not resulted profitably, as he was unable to sell them at a profit. There was some general conversation between Narber and Farley, in which Narber, as the plaintiff testifies, said that he himself had been in the ministry, but, as the salaries of ministers were small, he had been practically forced out of the ministry by the necessities of his family, but that he was in sympathy with ministers of the Gospel, and now was in a way to help them; that he had gone into the real estate business, and made a specialty of land values in Brooklyn, New York, and especially on Long Island, and had become an expert on land values; that he had bought a plot of land on Long Island at Westbury, and had organized a company known as the Meritas Realty Company; and that his purpose was to help other ministers and worthy Christian people who were not in a way to invest their money profitably. Narber said he had some lots at Westbury which were worth $700 a lot, but which he would sell to Farley at $640 a lot. Farley told Narber of his unprofitable speculation in lots in Brooklyn

and in Washington, D. C.; but Narber stated that Farley could make
no mistake if he should buy the Westbury lots on the prices stated.
The conversation ended without further results. The parties met sev-
eral times again, on which occasions Narber urged Farley to go down
to Westbury and examine the lots which Narber was offering for
sale. Finally Farley went down to Long Island in company with
Narber, and on the way down from Oneonta no discussion was had
as to the lots. When they arrived at New York, Narber and Farley
went out by rail to Westbury. Narber took Farley to the tract of land
in an automobile and showed it to him, and then drove him about the
immediate country, pointing out the advantages which attached to the
lands in question and their probable increase in value. He said that
the property had a market value then of $700 a lot. The parties then
returned to Brooklyn to look over Farley's lots there. They returned
to Albany, and thence to Oneonta, and, as the defendant says:

"It was while riding from Albany to Oneonta we had the first serious busi-
ness talk regarding the property at Westbury. * * * I told him that the
proposition did not appeal to me at all, that I did not see the value there,
and that I did not like to tie up money with no assurance that I could get
it out. He stated to me that the values were actually there, the market value;
that the property could be sold at any time for at least $700 per lot; that
it was worth that at any time in the market, and he told me, furthermore, that
he would help me out of the deal and make money for me. I told him that
the proposition did not appeal, but that he did, that I had confidence in him
as a brother minister and as a Christian gentleman, and that if I took the
property at all—I had not decided then to take it—but if I took it at all I
should take it purely or solely on his recommendation as to value and his as-
surance that he would get me out of it and make money for me, and at that
time I took an option on the property, on the way from Albany to Oneonta."

For this option the defendant paid $10. This happened on Octo-
ber 6, 1910. On October 8th the defendant signed a contract to pur-
chase seven lots at $640 a lot (i. e., $4,480 in all), partly for cash
(i. e., $1,120), and to give a purchase-money mortgage for the re-
mainder of the consideration; that is, the sum of $3,360, payable
at the end of two years, with interest payable half-yearly at the rate
of 6 per cent. On October 28, 1910, a deed was delivered by plain-
tiff to Farley, and the purchase-money mortgage and bond were ex-
ecuted and delivered by Farley to the plaintiff at the same time.
Farley thereafter paid interest on the mortgage for 18 months, and
when the mortgage became due—i. e., October 28, 1912—it was not
paid by the defendant. In April, 1912, Farley wrote to Narber a let-
ter as follows:

"First Baptist Parsonage, 33 Chestnut Street.

"Edson J. Farley.                    Oneonta, N. Y., April 17, 1912.

"My Dear Mr. Narber: I am writing to remind you of the gentleman's agree-
ment to dispose of my Westbury lots at a profit before the mortgage falls
due this fall. I do not expect to be able to lift the mortgage, and wish to get
the property off my hands some time this summer. I shall be satisfied to get
the money out that I have put in, with fair rate of interest. The efforts that
I have made to sell have so far proved unavailing. May I not hear from you?
          "Very sincerely,                    E. J. Farley."

Nothing resulted from this. In April, 1913, this action was brought
to foreclose the mortgage, and in May, 1913, Farley sent his lawyer

to the plaintiff, attempting to reconvey the property to the plaintiff, on the theory of a rescission of the contract of sale and the purchase by deed, and demanded the cancellation of the bond and mortgage and the repayment of all moneys theretofore paid by him on the contract of sale, and the interest paid on the mortgage.

On the trial of this action the defendant gave evidence tending to establish that at the time of the sale in 1910 the lots in question were not worth more than about $250 a lot, and that Narber's representation of a value per lot of $700 was false and fraudulent, and knowingly so made. The plaintiff gave evidence tending to prove that the then value of the lots was from $600 to $700 a lot, but the court found with the defendant on this point of value. Assuming a false statement by Narber as to the value of the lots, did the defendant make out a cause of action under his counterclaim? It seems to be long-settled law in this state that false representations by a vendor as to value are not in themselves sufficient to support an action by the vendee for fraud. Ellis v. Andrews, 56 N. Y. 83, 15 Am. Rep. 379; Van Slochem v. Villard, 207 N. Y. 587, 101 N. E. 467. This rule is qualified to the extent that, if the vendor resorted to a trick or artifice to prevent independent inquiry by the vendee, he will be held liable for fraudulent representations as to value. Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 523.

Again, if, with the representations as to value, the vendor makes a false statement as to any extrinsic fact, which representation is false and made with intent to deceive, then the vendee, who relies upon it, may have his action for fraud. There are numerous instances where this last-mentioned rule has been applied. In Van Slochem v. Villard, ut supra, while a false representation as to value was held not to be actionable, yet, where a vendor in selling stock represented it as "fully paid," it was held that, if the statement be shown to have been made fraudulently, an action for deceit would lie. In Townsend v. Felthousen, 156 N. Y. 618, 51 N. E. 279, an action for fraud was upheld where the vendor had made false statements as to specific facts entering into his representations of value. So in Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779, 36 Am. St. Rep. 701, where a vendor had made a false statement as to the price which he had himself paid for the property which he was selling, it was held that an action for deceit would run in favor of a vendee who had relied upon the statement.

But what is the extrinsic or independent fact shown in this case which takes it out of the general rule? The learned court at Special Term relied most strongly upon White v. Loudon, 90 Hun, 218, 28 N. Y. Supp. 619, 36 N. Y. Supp. 1135, and quoted from it copiously in its opinion. There the land sold was distant some 375 miles from the residence of the vendee, who never saw the land in question. He was shown a map of it and was told:

"That all or nearly all of the land surrounding and in the vicinity of the property had been taken up and was held for higher prices than the $2,300 per acre."

The court considered this as a statement of an independent and extrinsic fact, and, its falsity being shown, upheld the claim of fraud.

In the case at bar, the vendee was solicited to visit the land; he did so; no artifice was practiced upon him to prevent inquiry; he did not form a favorable judgment of the offer to sell; he did not see profit in it for him as a speculation. The moving consideration of his purchase, according to his story, was the assurance of Narber that the property could be sold in the next spring at a profit. But this is not a statement of an existing fact, such as to take the case out of the general rule. Nor was the alleged statement of Narber that he could sell the property for the vendee before the mortgage came due at a profit a statement of an existing fact. Statements of this nature as to future events are deemed to be but speculatively promissory, and do not constitute actionable deceit. I think the defendant has not sustained his counterclaim, and the judgment as entered should be reversed, and judgment awarded to the plaintiff for the foreclosure of the bond and mortgage set up in the complaint.

Judgment reversed, with costs and disbursements, and judgment directed for the plaintiff, with costs and disbursements. Submit order and findings to Mr. Justice CARR. All concur, except RICH, J., who dissents.