## WASHINGTON T. EDWARDS, Appellant, v. T. H. FRENCH et al.

### Division One, June 10, 1924.

1. **SPECIFIC PERFORMANCE: Correcting Description: Mutual Mistake.** Where there was a mutual mistake in the description of the lánds in the written contract, and both vendor and vendee stated to each other that they did not know whether the "numbers" were correctly stated, but if they were not they would be corrected, and the deeds executed in pursuance of the contract and placed in escrow correctly described the lands, the description should be corrected in the suit to compel specific performance of the contract.

2. ———: **Representations: Promise of Agents.** A promise made by agents of the vendor that they would secure a party to loan a certain sum of money to the vendee on the property is not within the scope of the authority of an agent to sell land, but is their individual promise and not binding on the vendor; and besides, such

Edwards v. French.

a promise is not a statement of an existing fact, and cannot constitute fraud affecting the validity of the contract of sale.

3. ———: Agent's Commission: Middleman.  The general rule that real estate agents cannot agree to divide commissions without the knowledge of their principals, and if they do either principal not consenting can rescind the contract, has no application to agents who are mere middlemen to bring the parties together and on whom the parties do not rely for information or advice regarding the trade, but fix the terms themselves and make the trade without the advice or aid of the agents.

4. ———: Voluntary Conveyance to Defeat Judgment.  A conveyance by the vendee of his farm worth one hundred dollars per acre to his sons and son-in-law for two dollars an acre, with the understanding that he was to be supported for life, made shortly after or shortly before the vendor brought his suit to compel the vendee to perform his contract to purchase the vendor's land, was evidently made to prevent the vendor, should he be successful in his suit, from realizing the fruits of his judgment, and greatly weakens the credibility of the vendee's testimony.

5. ———: Agents: Dividing Commission: Middlemen: According to Custom.  A custom among real estate agents, in the exchange of lands by their respective principals, where only one was to receive a commission, to divide with the other, is not unlawful, and the division without notice to the principals will not authorize either to rescind the contract, where the agents were mere middlemen, and the parties did not rely upon advice or information received from them, but made their own investigation, fixed the terms of the trade and agreed to them without advice or aid.

Headnote 1: Specific Performance, 36 Cyc. 609, 753; Reformation of Instruments, 34 Cyc. 908, 936. Headnote 2: Vendor and Purchaser, 39 Cyc. 1257; Agency, 2 C. J. sec. 245, 247 (1926 Anno). Headnotes 3 and 5: Agency, 2 C. J. sec. 521 (1926 Anno). Headnote 4: 40 Cyc. 2581.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED AND REMANDED (*with directions*).

*Scott J. Miller* for appellant.

(1)  In reforming contracts equity does not make new ones.  It lets the parties make their own.  Its func-

tion is to find out if the contracting parties' minds met on a given substantial proposition, that is, it searches out the mutuality, and if by mistake of both the contract asserts to the contrary or is silent, it reconstructs its terms so as to speak the truth. When it has done that the resulting product is the real contract the parties themselves made, and not one the chancellor accommodatingly made for them. Whatever might have been the description used by O'Dell, there is no question of the things that was the subject-matter of the transaction. Fisher v. Dent, 259 Mo. 91. The land to be traded was the 211 acres owned by Edwards and this was the description that was to be put in the contract by the scrivener, O'Dell. It was what French wanted and it was what Edwards intended; it was what O'Dell attempted to write. Both French and Edwards were innocently and mutually mistaken and both agreed if it was a mistake that it should be corrected. O'Dell was the agent, in writing the contract, of both parties. He wrote the contract at the direction of defendant French, and without the presence of Edwards. He was Edwards's agent in making the sale. He wrote it at the direction of French with Edwards absent. His right to write it was confirmed by Edwards when he signed it and there can be no question of the right of reformation. Stephens v. Stephens, 183 S. W. 573; Robinson v. Kearns, 250 Mo. 675; Dougherty v. Dougherty, 204 Mo. 238. (2) The evidence shows conclusively that every part of the contract was carried out by the plaintiff to the letter and on time. (3) The evidence is clear that the agent of the plaintiff showed the defendant no land except the 211 acres. It is equally clear from the defendant's testimony that in his two attempted sales of the land he showed the correct lines of the land, traded for by him. The claim of showing other lands is waived by his own testimony. The claim that the land was valued too high in the trade is refuted by the testimony of all of the men who lived in that neighborhood, but this would be no defense.

Edwards v. French.

*L. W. Reed* and *Davis & Ashby* for respondents.

(1)   It is true the case being in equity will be tried *de novo* by this court, but the chancellor having seen and heard the witnesses and there being substantial evidence, if not the weight of the evidence, in favor of the finding of the chancellor, this court will defer to the finding of the chancellor.   McKinney v. Hawkins, 215 S. W. 253; Williamson v. Frazee, 294 Mo. 320, 332.   (2)   A bill for the specific performance of a contract is not granted as a matter of right by the court to which it is addressed, but from a just and reasonable discretion.   This discretion is not to be exercised in an arbitrary or capricious manner, but is to be governed by sound legal rules and principles.   Ivory v. Murphy, 36 Mo. 542; Edwards v. Watson, 258 Mo. 646; Hargis v. Smith, 178 S. W. 72, 75; Beheret v. Myers, 240 Mo. 77.   (3)   A court of chancery in the exercise of a sound judicial discretion, "often refuses specific performance of a contract which it would not set aside."   Gottifried v. Bray, 208 Mo. 660. Defendant may successfully resist a decree for specific performance upon facts which would not justify the setting aside of an executed contract.   Ranck v. Wickmire, 255 Mo. 42, 61; Harrison v. Town, 17 Mo. 242; Smith v. Riordan, 223 S. W. 63.   (4)   Where a party calls for specific performance he must, as to every part of the transaction, be free from every imputation of fraud or deceit, and must show that his conduct has been clear, honorable and fair.   Gottifried v. Bray, 208 Mo. 652, 661; Hargis v. Smith, 178 S. W. 72; Wilson v. Henderson, 191 S. W. 72.   (5)   If, in showing the land to defendant, plaintiff's agent, O'Dell, showed him land that did not belong to plaintiff, and falsely represented it as being a part of plaintiff's farm, plaintiff is bound by said fraudulent representation of his agent, whether he had knowledge of it or not.   Laird v. Keithley, 201 S. W. 1138; Shuttlefield v. Neil, 163 Iowa, 470.   (6)   Plaintiff having failed to furnish abstract of title to all of his land, that is, only one hundred and seventy acres

thereof, was not able to show that he had done all he agreed to do, and his failure in this regard is sufficient to prevent his prevailing in this proceeding. Ranck v. Wickmire, 255 Mo. 42, 61; Lanyon v. Chesney, 186 Mo. 540, 553. (7) O'Dell, plaintiff's agent, and Stucker, defendant's agent, agreeing to divide the commission paid O'Dell by plaintiff without defendant's knowledge, was sufficient fraud within itself to justify a court of equity to deny specific performance. De Steiger v. Hollington, 17 Mo. App. 382; McClure v. Ullman, 102 Mo. App. 697; Meyer v. Promotion Co., 179 Mo. App. 695; Corder v. O'Neil, 207 Mo. 632. (8) It is true that plaintiff had knowledge that his agent O'Dell was to divide his commission with defendant's agent Stucker, but even though he was ignorant of said fact, nevertheless, he is bound by the fraudulent act of his said agent O'Dell. Marsh v. Buchan, 46 N. J. Eq. 595; Norman v. Roseman, 59 Mo. App. 682.

SMALL, C.—Suit for specific performance of contract for the sale and exchange of land. The petition seeks to correct the description in the contract for mutual mistake in describing the plaintiff's farm, and to have specific performance thereof as corrected. The contract was for the sale of plaintiff's farm, consisting of 211 acres in Livingston County, to defendant, for $175 per acre, fifty acres of land in Texas to be taken by plaintiff at $14,000, and the balance, $15,750, to be paid in cash December 1, 1920, both tracts to be subject to certain incumbrances thereon.

The answer, besides a general denial, admits the execution of the contract as written and alleges that O'Dell and Stucker were plaintiff's agents, and that plaintiff and his said agents informed the defendant that plaintiff's farm was of the value of $175 per acre; that it contained 210 acres and was fertile and productive; that they had a party with the money to make defendant a loan on said land of $15,750, the balance to be paid thereon by defendant to plaintiff; that they told

defendant French that said Stucker was defendant's agent representing defendant in making said deal, but he was in reality the agent of the plaintiff, and plaintiff and his said agents formed a conspiracy for the purpose of defrauding defendant in making said deal. Further, that plaintiff failed to furnish defendant an abstract showing good and sufficient title in him to said land as required by said contract; that plaintiff and his said agents falsely and fraudulently caused defendant to inspect and examine land which was not owned by the plaintiff and concealed other land owned by the plaintiff, which plaintiff now claims to have been purchased by the defendant in said deal. Further, that defendant has not a good title to said land and has neglected and refused to convey said land to defendant and has not offered or tendered any deed to the defendant. That the representations by plaintiff and his agents to defendant to the effect that said land was of the value of $175 per acre, that there were 210 acres thereof, that the same was fertile, productive soil and that they had a party with the money on hand to make defendant a loan of $15,750, on said land, were false and untrue, and defendant relied thereon and was deceived thereby and by reason thereof executed said contract. Wherefore defendant prays that said contract be rescinded and for naught held.

The reply puts the new matter in the answer in issue.

We have examined the evidence in this case, both as shown by the appellant's abstract and the respondents' supplemental abstract. We have no difficulty in arriving at a conclusion as to the following facts: We find that there was a mutual mistake in the description of the land of the parties in the written contract as stated in the petition. The testimony is undisputed that the plaintiff, at the time he signed the contract, stated in the presence of defendant French, that he did not know that the "numbers" of his land were properly given in the contract, but if not they would be made proper. The defendant French said the same thing as to the description of his Texas land. Immediately after the contract

was signed, both parties made deeds to their respective properties to the other and deposited them in the James-port Bank as required by the contract and the properties were properly described in said deeds.

We also find that the defendant French was cor-rectly shown the plaintiff's farm by O'Dell, the plaintiff's agent. It is true that French and his three sons and son-in-law, who accompanied him to examine the farm, testify that O'Dell showed them thirty acres belonging to one Brown, as constituting the northwest portion of the farm, and did not show them the thirty acres which constituted the southeast portion of said farm. But O'Dell and Stucker testify to the contrary, and that the proper thirty acres was shown them. Besides, the un-disputed testimony is, including that of the witnesses put on by the defendant French, that the southeast thirty acres is substantially more valuable than the Brown thirty acres. Furthermore, before the time for closing the contract, December 1, 1920, arrived, the defendant French and one or more of his sons took several parties, to whom they were endeavoring to sell the plaintiff's farm, to examine it. They admit that on these occasions the plaintiff himself, Mr. Edwards, showed them the southeast thirty acres as being a portion of the farm, and told them that the Brown thirty acres did not belong to it. When Edwards so informed them they did not pre-tend or indicate in any manner that they were surprised or that the wrong thirty acres had been exhibited to them by O'Dell.

As to the value of plaintiff's land: The evidence showed that at the time there was much activity in farm lands and that other like lands in that neighborhood were held and sold at as much as $175 an acre or more. But $14,000 of the purchase price of this land was to be paid for with the fifty acres in Texas which defendant put in the trade. The evidence does not show definitely what this Texas land was worth, but it does show that defendant French who owned it about a year was very much dissatisfied with it and was anxious to trade it off

for land in Missouri, especially in his part of the State. We have no doubt but that said Texas land was worth much less than $14,000, and consequently that the plaintiff did not sell his farm for $175 an acre or its equivalent in cash, but for considerably less than that sum. Indeed, one of defendant's witnesses, Mayhugh, testifies that defendant in his presence, after defendant had repudiated the trade, told the plaintiff that he owed him an apology, that the Texas land was not what it was sold to him for; it had not the value to it, that "they run it over on me when they sold it to me and I am doing the same thing on you," or words to that effect. This statement of defendant's witness Mayhugh is nowhere denied by the defendant. There was no misrepresentation of the quality or character of the land, as it was thoroughly examined by defendant and his sons and son-in-law and they passed on its quality themselves.

As to the statements of the real estate agents that they would procure a loan for defendant to make the first payment for plaintiff's land: It is true that defendant and his sons and son-in-law testify that O'Dell and some of them say Stucker told them at the time the trade was made they had a man or would procure a man who would loan defendant sufficient on the plaintiff's farm to make the cash payment of some $15,750, on the 1st of December, when the deal was to be closed. But there is no substantial evidence that defendant Edwards was present when any such promise was made or that he ever heard of it, and both O'Dell and Stucker deny they ever made any such promise. Furthermore, the promise that said agents had a party or would procure a party to make a loan on said property for defendant as claimed by him, was not within the scope of the authority of such agents, had they both been agents for the plaintiff. If made, it was but their individual promise which could not affect the plaintiff's contract with defendant. Besides, such statements, if made, were not statements of an existing fact, but were of a promissory character, which

could not constitute fraud, affecting the validity of the
contract. [Kreshover v. Berger, 62 Misc. (N. Y.) 613;
Meritas Realty Co. v. Farley, 166 App. Div. 420.]

As to plaintiff's title: His abstract of title covering
the 210 acres of his farm was delivered to the duly au-
thorized attorney of French for examination. It was
kept by the said attorney, and no objection was ever
made thereto so far as it related to said 210 acres, and
indeed the defendant French at the trial said that he
made no contention that the title was not good. There
was no evidence that plaintiff or O'Dell ever represented
that Stucker was defendant's agent.

As to O'Dell's agreement to divide commissions with
Stucker: O'Dell was a real estate agent and lived at
Jamesport, a few miles from plaintiff's farm, which
plaintiff had placed in O'Dell's hands for sale or ex-
change. Stucker lived at Breckenridge near defendant's
300-arce farm and upon which he resided in Caldwell
County, about eighteen miles from plaintiff's farm.
Stucker was also a real estate agent, and had sold the
fifty acres of Texas land to the defendant French about
a year before the transaction in question for $14,000,
French paying half cash and giving his vendor's lien
notes for the remaining $7000. Soon after he bought
the Texas land French desired very much to get rid of
it and trade it off for Missouri land. Stucker said he
would attempt to procure such a trade for him. In re-
sponse to French's question as to how much commission
Stucker would charge for so doing, Stucker replied that he
would not charge him any commission in view of the fact
that he was dissatisfied, and he had been instrumental,
as the agent of the company that owned it, in selling said
Texas land to him. Hearing that O'Dell had the plain-
tiff's farm for sale and would take part of the purchase
price in other land, Stucker notified French of that fact.
Shortly afterwards defendant French and his three sons
and his son-in-law, as his advisors, all of whom were
men apparently of mature years, went with Stucker to
examine the plaintiff's farm. On the way over they

stopped at Jamesport at O'Dell's office, and he accompanied them to said farm. He was familiar with its boundaries. Edwards was not at home when they arrived there or while they examined the farm. He had gone to Jamesport with a load of hogs. After the examination of the farm was completed they all returned to Jamesport to O'Dell's office. Defendant French and his sons and son-in-law retired to a room by themselves to consult with reference to making the trade. Plaintiff's terms had been mentioned by O'Dell. Plaintiff was not present until after defendant had agreed on practically all the terms with O'Dell. After consulting for some time in said room, defendant and his sons and son-in-law came out and defendant's son, Harry, acting as spokesman, announced the terms they would trade upon, one being that the Texas land should be taken by plaintiff at $14,000, the sum it cost the defendant. The contract was then, shortly afterwards, signed by the plaintiff and defendant. Stucker remained outside of said room and took no part in negotiating the trade. The trade was wholly consummated by O'Dell and the plaintiff and the defendant and his sons and son-in-law. O'Dell testifies that it was customary for real estate agents, when an exchange of property was made between two parties and one of the agents got a commission from his party and the other was to get nothing from the party he represented, for the agents to divide the commission, but that he had no actual agreement of that kind with Stucker until after the trade was made and the contract was signed and delivered, but that Stucker told him he was to get no commission from the defendant and he assumed that Stucker expected him, O'Dell, to divide his commission. Stucker testifies that while he told French under the circumstances hereinbefore mentioned that he would charge him no commission, he also told him that he would look to the other side for his pay. This was on the way over to look at the plaintiff's farm. He, too, testified that no agreement to divide commissions with O'Dell was made until after the trade was completed. There is no

evidence that Edwards knew anything about an agreement between O'Dell and Stucker to divide commissions until after the contract was made and signed, and the deeds delivered to the Bank of Jamesport in escrow. At that time he learned of the agreement and made no objection to it. Did not consider it affected him.

French testifies that he did not know that Stucker was to receiver any commission from anyone and that he agreed to act for him without compensation. But the fact that he received part of O'Dell's commission would have made no difference to him, except that he liked to see a man keep his word.

It is a well settled general rule that real estate agents cannot agree to divide commissions without the knowledge or consent of their principals, and if they do either principal not consenting can rescind the contract because it is void as against public policy. [De Steiger v. Hollington, 17 Mo. App. 382; Corder v. O'Neill, 207 Mo. 632; Marsh v. Buchan, 46 N. J. Eq. 595, and other cases cited by respondents.]

But this rule does not apply to agents who are simply middlemen to bring the parties together and on whom the parties do not rely for information or advice regarding the trade, but make the trade without their aid or advice. Defendant French and his sons and son-in-law testify, in effect, that Stucker told them the trade was a good one and they should not let the opportunity pass to make it. But Stucker said he gave them no advice whatever, either as to the value of the plaintiff's property or the advisability of making the trade; that he knew nothing of the terms of the trade until it was made. However, that may be, the evidence is clear that defendant did not rely on any advice of Stucker because he himself testifies that he and his three sons and his son-in-law, all apparently of mature age, after examining the plaintiff's farm, retired to a room by themselves and without consulting Stucker, who remained outside, consulted together for some time and then announced through defendant's son, Harry, as spokesman,

to O'Dell, that they would make the trade if plaintiff
would take the Texas land at what it cost defendant and
throw in some posts and lumber, which were upon plain-
tiff's farm.   Plaintiff, who was not there at the time,
shortly afterwards appeared and agreed to put in the
lumber and posts, and thereupon the contract was signed
with the understanding with French that if the land was
not properly described it could be corrected, as herein-
before stated.

It is also true defendant testifies in general terms
that he relied on the honesty of O'Dell and Stucker and
on Stucker to trade his Texas land so as to avoid loss,
but the facts show, as defendant testifies, that he and
his sons and son-in-law in the room to which they had
retired by themselves determined and announced to
O'Dell what they would do without the aid or advice of
Stucker.    Furthermore, defendant also testifies that
when O'Dell and Stucker told him they had a man who
would loan sufficient on the property to make the cash
payment as he testifies (which they deny) *he though he
was trading with O'Dell and Stucker,* which means that
he thought Stucker, as well as O'Dell, was the agent of
plaintiff, and that Stucker was not his agent.  Of course
defendant could not expect to hold plaintiff for Stucker's
promises if Stucker was his own agent.

Indeed, the answer does not set up that Stucker was
the agent of defendant or had ever been accepted or re-
lied on by defendant as his agent, but simply states that
the plaintiff and said Stucker and O'Dell "told defendant
that the said J. M. Stucker was defendant's agent, rep-
resenting defendant in making said deal, but the truth
of the matter was the said J. M. Stucker was in reality
the agent of the plaintiff."

Furthermore, it appears in evidence in this case
that shortly after, or before, this suit was brought, the
defendant French transferred and conveyed his entire
home farm in Caldwell County worth $100 an acre or
more, to his children, including the three sons and his
daughter, the wife of the son-in-law who helped him make

this trade, for $2 per acre, with the understanding that he was to be supported for life. This transfer was undoubtedly made to prevent the plaintiff, should he be successful in this suit, from realizing the fruits of his judgment. This transaction much weakens the weight of defendant's testimony.

In Law v. Ware, 238 Ill. 360-369, where the facts were similar, the court said at page 369: "If the understanding was as claimed by the defendant and there was no commission to be paid on this transaction, the division by Bogue of his commissions with the defendant was entirely proper and in accordance with an established custom among real estate brokers in Chicago. If, however, the commission was for this exchange or for both, the defendant owed no duty to the complainant other than to secure the exchange on the terms fixed by the complainant." And it was held that the division of commissions was not illegal, although not known or agreed to by the principals. In this case the evidence of O'Dell is undisputed that it was the custom of real estate brokers, in the exchange of lands where only one was to receive a commission, to divide with the other. While we do not hold that such custom under such circumstances of itself permitted O'Dell to divide commissions with Stucker, yet, in connection with defendant's evidence that he closed the deal without Stucker's aid, the fact that he was to pay Stucker nothing for his services in bringing about the trade is strong to show that he was a mere middleman to bring the parties together. We so hold.

In such cases it is not unlawful for the real estate agents to divide commissions without notice to the parties making the trade. [Law v. Ware, 238 Ill. 360-69; Clark v. Allen, 125 Cal. 276; Cox v. Haun, 127 Ind. 325; Montross v. Eddy, 94 Mich. 100; Litts v. Morse, 145 Wis. 472; Jordan v. Anderson, 36 S. D. 508; Knaus v. Brewing Co., 142 N. Y. 70; Hill v. Patton, 160 S. W. (Tex. App.) 1157; McLure v. Luke, 154 Fed. 647; Peters v. Riley, 81 S. E. (W. Va.) 532; Childs v. Ptomey, 17 Mont.

502; Gross on Real Estate Brokers, secs. 51-53-55-56; Walker, Real Estate Agency (2 Ed.) secs. 475-557-558.]

The case of Corder v. O'Neill, 207 Mo., supra, cited by respondent, recognizes the rule that a mere middleman may receive commissions from both parties to the trade, but in that case the agent was not a mere middleman, because he was present and participated and advertised with his principal when making the trade, and it was not made independently of him and while he was absent, by the principal and his sons and son-in-law as his advisors, as in this case.

The court below having rendered judgment against plaintiff, the result is the said judgment is reversed and the cause is remanded, with directions to the circuit court to enter judgment for plaintiff herein as prayed in his petition and in accordance with this opinion. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.