**D. D. COX and Betty Cox, Appellants,**

v.

**Eugene BRYANT and Opal Lee Bryant, Respondents.**

**No. 48450.**

Supreme Court of Missouri,

Division No. 2.

July 10, 1961.

Don E. Burrell, E. Andrew Carr, Springfield, for appellants.

J. W. Colley, Greenfield, Robert Stemmons, Mt. Vernon, for respondents.

BARRETT, Commissioner.

The question presented by this appeal is whether, in the particular circumstances of this record, the trial court appropriately exercised its discretion and denied specific performance of a contract to sell real estate.

D. D. Cox is a real estate salesman employed by a real estate broker in Springfield, the Jim Morris Sales Company. The defendants, Mr. and Mrs. Bryant, own a 405 acre farm near Everton in Dade County. On November 30, 1959, Cox sought and secured, as agent for Morris, an "open," unsigned listing of the Bryants' farm for $40,000. Cox says that at that time he had a prospective purchaser in mind and had no thought of buying the farm himself. The prospective purchaser did not materialize and on December 5, 1959, Cox had his wife prepare, by filling in the blank spaces on a printed form, a contract for the sale of the Bryant farm for $40,000. Mrs. Cox, as one of the purchasers, then signed the contract in Springfield. Mr. Cox took the contract and drove to the Bryant farm. He says that he first asked "Gene," Mr. Bryant, if he would "take any less than that for that place." Bryant replied that he would not but that he " 'would take what I told you I'd take.' " Cox then said, "Well, would it make any difference to you who bought the place?" Cox says that Mr. Bryant answered, " 'Not as long as I get $38,000.00 it wouldn't make a bit of difference.' " Then, Cox says, "I just reached him the contract that my wife and I had drawed up the night before." They went in the house and Mr. Bryant and his wife "looked at it for some time" and finally both signed the contract as "sellers" and Cox signed, above his wife's signature, as "purchaser" and also on behalf of the Jim Morris Sales Company. Cox says that when he went to the farm he took his personal check for $3,000 which he showed the Bryants, at the same time informing them that he would turn the check in to the Jim Morris Sales Company, that "this is just being run through the office as another deal as far as the office is concerned." The following day, Monday, Cox "turned the contract with the $3,000.00 check into Jim Morris Sales Company."

The contract called for the payment of $40,000, "$3,000.00 of which is this day deposited with Jim Morris Sales Company," the balance to be paid in cash upon delivery of the deed and provided the purchasers were able to obtain a loan of $25,-000. The contract contained a provision

that if for any reason the sellers or the purchasers failed to complete the sale or purchase the defaulting parties would "pay to the other and Jim Morris Sales Company" as liquidated damages ten per cent of the purchase price, here $4,000. At the bottom of the form and as a part of the contract, Mrs. Cox had inserted the provision, "$2,000.00 Commission."

By January 7, 1960, Mr. Bryant sickened of his bargain and tried, unsuccessfully, to persuade Cox to accept $4,000 as liquidated damages and release him from the contract. On January 8th Mr. Bryant sent the Jim Morris Sales Company a certified check for $4,000 and gave notice that he would not perform the contract. On January 10th Cox, at the request of Morris, deposited $3,000 cash with Morris and upon the Bryants' refusal to execute a deed Cox and his wife instituted this suit for specific performance. As indicated, the trial court denied specific performance and Mr. and Mrs. Cox have appealed from the decree.

The trial court construed the contract as requiring a cash payment of $3,000 to the Bryants and among other matters found that the $3,000 check was an insufficient deposit, that the defendants had no knowledge of it and did not accept it. Therefore the court found that the "plaintiffs' performance in this respect is insufficient." The plaintiffs relied upon a custom or practice of real estate brokers to hold "deposit checks" until closing the deal and then apply them on the purchase price. The trial court found that the plaintiffs' evidence was insufficient to establish the custom. These particular findings have been noted because the appellants contend that they are erroneous as a matter of fact and of law, that these and other findings were not in issue under the pleadings and that the trial court has erroneously entered a decree broader than the pleadings.

■ But upon this record, in this appeal from a decree denying specific performance, it is not necessary to consider these particular contentions of the parties in de-

tail. It is very difficult, if not impossible, in an appeal in an equity suit to predicate error, in its conventional sense, upon the trial court's findings of fact, conclusions of law or in the admission or rejection of evidence. Lee v. Lee, 258 Mo. 599, 167 S.W. 1030; Maryland Casualty Co. v. Dobbin, 232 Mo. App. 557, 108 S.W.2d 166. Upon this appeal in a specific performance action it is the duty of this court to review the record anew and ultimately to enter such judgment as, having regard to the applicable and compelling equitable principles, the trial court should have entered and "as to the appellate court shall seem agreeable to law." Sup.Ct. Rule 83.13(c), V.A.M.R.; Miller v. Coffeen, 365 Mo. 204, 280 S.W.2d 100. In thus viewing the record this court considers "any evidence which was rejected by the trial court and duly preserved for the appeal when the appellate court believes such evidence to be admissible." Sup.Ct.Rule 73.01(d). In this connection it is assumed that the plaintiffs' evidence established the custom of real estate brokers to hold "deposit checks" and apply them on the purchase price. Furthermore, it is not believed that the fact of the $3,000 check or the manner in which it was handled had any material bearing upon Mr. Bryant's refusal to abide by his contract. And for the purposes of this opinion it is assumed that the trial court's findings as to these issues were erroneous.

■ As to the pleadings, even a court of equity is limited, in general, "to the cause of action and issues made by the pleadings." But all pleadings "shall be so construed as to do substantial justice" (Sup.Ct.Rule 55.26), and in addition to the relief prayed a court of equity may grant "relief consistent with the suit tried." Branner v. Klaber, 330 Mo. 306, 332, 49 S.W.2d 169, 180. In equity, particularly in specific performance, precise pleas or allegations are not necessary to invoke the applicable maxims of equity, for example, the doctrine that one must come "into a court of equity with clean hands." These equitable rules or maxims are matters of public policy and apply per-

force "when the facts call it into use." And sometimes the compelling facts are made to appear for the first time through disclosures made upon the trial of the cause and in the absence of special defensive pleas or in the absence of well-defined trial issues. Houtz v. Hellman, 228 Mo. 655, 670–671, 128 S.W. 1001, 1006.

▪ In this latter category of an unpleaded issue upon which the trial court denied specific performance was its finding and the admitted fact with respect to the $2,000 real estate commission. As stated, Mr. and Mrs. Cox signed the contract in their individual or personal capacities as purchasers and Mr. Cox also signed the contract on behalf of his employer, the real estate broker, Jim Morris Sales Company. The contract provided for a $2,000 commission and since the transaction was to be "run through the office as another deal as far as the office is concerned," it must be assumed that the Bryants expected and were obligated to pay the broker, Morris, that commission. What they did not know and what Cox did not tell them upon his becoming a purchaser was that he was to receive 60% of the commission and that fact appeared for the first time upon the trial of the cause during his cross-examination:

"Q. Did you get half of the real estate commission? A. Yes, no—I get 60% and he (Morris) gets 40.

"Q. Out of this $2,000.00 commission you would have gotten 40% of it? A. I would of got 60%.

"Q. You would have gotten 60%? A. Yes.

"Q. He gets 40 and you get 60? A. Yes, sir.

"Q. Did you tell Bryant that? A. I beg your pardon.

"Q. Did you tell Bryant that you were going to get 60% of the $2,000.00 commission? A. No, I didn't tell him about that."

▪ Cox as a salesman for the Jim Morris Sales Company secured the listing of the Bryants' property and of course became their agent. As their agent he was under several strict duties of loyalty (Restatement, Agency 2d, Secs. 387–390) and the penalty for the breach of any of these duties "is not based upon the existence of harm to the principal in the particular case. It exists to prevent a conflict of opposing interests in the minds of agents whose duty it is to act solely for the benefit of their principals." Comment to section 389, Restatement, Agency, p. 206. It is not necessary to enter upon an extended discussion of this subject, it is sufficient to say that a real estate broker may not have a secret personal interest in the subject matter of his employment, or divide or make a secret profit or commission, or become the purchaser of his principal's property unless he discloses to the principal everything within his knowledge which might affect the principal's rights or interests "or influence his action in relation to the subject matter of the employment." 8 Am.Jur., Secs. 89, 152, pp. 1038, 1075; Harry M. Fine Realty Co. v. Stiers, Mo.App., 326 S. W.2d 392; Edwards v. French, 304 Mo. 194, 263 S.W. 132. If the agent makes full disclosure he may become the purchaser of his employer's property or represent both buyer and seller and collect a commission from both parties, although "there is a natural repugnance to the practice of a broker representing both buyer and seller." Nahn-Heberer Realty Co. v. Schrader, Mo. App., 89 S.W.2d 142, 144. For illustration, in cases in which the real estate broker had an option to purchase his employer's property, or in which his agency had terminated, it was held that he was entitled to the commission, provided he had fulfilled his duty as agent. Annotations 164 A.L.R. 1378, 1382; 27 A.L.R.2d 1348, 1417. But here there was an "open" listing, neither Cox nor Morris had an option to purchase the Bryants' property. As indicated, after full disclosure an agent may become the purchaser of his principal's property, but

" 'a court of equity, upon grounds of public policy, will nevertheless subject it to the severest scrutiny.' " 1 Mechem, Agency, Sec. 1221, p. 893.

In this case, before Cox could properly become the purchaser, it was his duty to terminate all agency relationships with the Bryants and thus place himself in the character and position of a purchaser. · "When this relation existed it must be held to have continued until the agent, in dealing with the principal's property, notifies the principal that he is no longer dealing as an agent, *but desires to deal at arm's length as a purchaser,* and has disclosed all the facts and information acquired by him to the principal that relates to the subject-matter of the contract while the agency existed." Clark v. Rogers Foundry & Mfg. Co., Mo.App., 199 S.W. 576, 577. Among the facts that Cox should have disclosed to the Bryants was the fact that he was to receive a $1,200 commission for a sale to himself. Holt v. Joseph F. Dickmann Real Estate Co., Mo.App., 140 S.W.2d 59; Larner-Diener Realty Co. v. Fredman, Mo., 266 S.W.2d 689. What effect the failure to disclose this fact should have on the plaintiffs' right to specific performance is a matter within the sound judicial discretion of the court. The essence of the plaintiffs' position is that they are entitled to specific performance as a matter of right, but "specific performance does not follow as a matter of course merely by establishing the existence and validity of the contract involved." Annotation 65 A. L.R. 7, 22; Beheret v. Myers, 240 Mo. 58, 144 S.W. 824; Miller v. Coffeen, supra. "For example, it is trite doctrine that specific performance does not go in all cases where a suit for damages for violating the contract might lie. So, specific performance is a matter somewhat of grace, not a hard and fast matter of right and as of course." Houtz v. Hellman, 228 Mo. loc. cit. 671, 128 S.W. loc. cit. 1006.

Thus, for the reasons indicated, in reviewing the case anew, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.